666 A.2d 323

**COMMONWEALTH of Pennsylvania**

v.

**James Edwin FITZPATRICK, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 14, 1995.

Filed Oct. 16, 1995.

Jack W. Connor, Uniontown, for appellant.

Ralph C. Warman, District Attorney, Uniontown, for Commonwealth, appellee.

Before TAMILIA, POPOVICH and CERCONE, JJ.

TAMILIA, Judge:

James Fitzpatrick appeals from the March 2, 1995 judgment of sentence imposing a term of imprisonment of three (3) to twelve (12) months. Following a nonjury trial, appellant was convicted of possession of a controlled substance,[1] namely, 54 grams of cocaine.

On April 29, 1993, a U.S. Postal Inspector, operating pursuant to the Parcel Interdiction Program, intercepted and opened a package addressed to one Jeff Shipley, R.D. # 2, Box 148, Uniontown, Pennsylvania. The package contained in excess of three pounds of marijuana. Thereafter, postal inspectors met with Pennsylvania State Troopers located in

1. 35 P.S. § 780–113(a)(16).

Uniontown and the officers agreed that they would perform a controlled delivery of the package to the listed address, which was the residence of one Mark Anthony Kelly. The officers also installed a device in the package which would emit an audible signal when the package was opened. The officers then applied for and obtained an anticipatory search warrant, the execution of which was expressly conditioned upon receiving a positive response from the device implanted in the package. An inspector then delivered the package while other officers set up surveillance. One Randy Lee Casper signed for and received the package on the porch of the residence, but set the unopened package outside the front door and departed. Approximately one hour later, Mark Kelly arrived at the residence with appellant and Tom Webb. Kelly picked up the package and the three entered the house. Ten minutes later, appellant, Kelly and Webb exited the residence, with Kelly carrying the still unopened package. Upon seeing the men attempt to leave the residence, the surveillance team converged. When the officers identified themselves, Kelly began to run toward the back of the house and appellant ran toward his vehicle, but was stopped before reaching it. At that time, postal inspectors Victor Cunicelli and David Shaffer noticed a large bulge in appellant's front left pocket. Inspector Shaffer asked appellant whether he had any weapons or drugs in his possession and appellant stated that he did not. Inspector Shaffer then conducted a pat-down of appellant and, being unable to determine what was in appellant's front left pocket, the inspector reached in and withdrew a set of keys and a packet containing 54 grams of cocaine. Immediately thereafter, Inspector Shaffer read to appellant the *Miranda* warnings. Appellant then stated to Inspector Shaffer, "I shouldn't have taken it. I shouldn't have taken it." (N.T., 2/1/95, p. 58.)

Prior to trial, appellant filed a motion nunc pro tunc to suppress the cocaine and statement. On February 25, 1995, the motion was denied and, on the same date, appellant was convicted of possession of a controlled substance. This appeal followed.

■■■■ Appellant's contention on appeal is that the trial court erred in denying his motion to suppress. In reviewing the denial of a motion to suppress evidence, we must first determine whether the suppression court's factual findings, inferences and legal conclusions are supported by the record. *Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177 (1992). Where the suppression court finds for the Commonwealth, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Id.* Additionally, it is exclusively the province of the suppression court to determine the credibility of the witnesses and weight to be accorded to their testimony. *Commonwealth v. Neely*, 298 Pa.Super. 328, 444 A.2d 1199 (1982). If the factual findings are supported by the record, then we may reverse only for an error of law. *Lopez, supra.*

■■■■ We have discussed the applicable search and seizure law as follows:

Pursuant to the landmark decision of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may temporary detain a person if he observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot.

*Commonwealth v. Patterson*, 405 Pa.Super. 17, 20, 591 A.2d 1075, 1077 (1991). The reasonable suspicion necessary to justify a *Terry* stop is less stringent than probable cause, but the detaining officer must have more than a hunch as the basis for his stop. *Id.* "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by the police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). Lastly, to justify a frisk incident to an investigatory stop, police need to point to specific and articulable facts indicating the person they intend to frisk may be armed and dangerous. *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111 (1985).

■  Instantly, our review of the record reveals the suppression court had ample evidence to support its decision that the police lawfully conducted a protective pat-down search of appellant. Appellant arrived at the scene of the intended execution of a search warrant for drugs with the suspected recipient of the drugs, a well known and violent drug dealer. After spending only a short time inside the residence, appellant then started to leave in the company of the other two men involved, one of whom carried what police knew to be three pounds of marijuana. When appellant saw police, he "hurriedly" ran (N.T. 2/1/95, p. 42) toward his vehicle in an apparent attempt to flee. Further, there was a clearly visible and large bulge in his left front pocket. Under these facts, we find the police had a reasonable belief that their safety was in jeopardy, and a limited search for weapons therefore was warranted. This is especially true in light of our prior holding that when a police officer is confronted with an individual who the officer reasonably believes to be involved in narcotics traffic, a *Terry* pat-down frisk for the protection of the officer is proper. *Patterson, supra* (taking judicial notice that drug dealers are likely to be armed and dangerous).

At the suppression hearing, Inspector Shaffer testified as follows:

[DISTRICT ATTORNEY]: Now, what then did you do when you arrived and after having talked with Inspector Cunicelli, what then did you do?

A. Well, Inspector Cunicelli again told me that it was not secure—that the scene was not secure and to pat down the two individuals here near the car. And that's what I proceeded to do.

Q. And what was the purpose in your pat down of the two individuals at the scene of the car?

A. To ensure the officer's safety of the individuals that were on the scene.

.    .    .    .    .

Q. And what did you see when you observed the defendant?

A. Well, I had—initially when I came up to the defendant, I asked him, "do you have any weapons or drugs?" And he stated, "no." And I could see that he had a bulge in his pocket at that time, and I believe Inspector Cunicelli had told me there's something in his pocket.

Q. And when you saw the item in his pocket, what were your concerns?

A. Well, my concern being that it possibly could be a weapon. Again, we had many officers on the scene and up behind there for the safety of all involved.

Q. And when you saw the bulge in his pocket and were being told by Inspector Cunicelli that there was a bulge in his pocket, what did you then proceed to do?

A. I believe I had him lean against his car and I frisked him, brought my hands down over his body to feel for a weapon in the belt or something to that effect.

.    .    .    .    .

Q. Prior to your taking anything—going into his pocket, what did it feel like when you were patting him down?

A. It was a bulge. It was large. It was—I believe he was wearing blue jeans. It was tight and it wasn't something that you could really feel[.]

(N.T., 2/1/95, pp. 53–55.) Based on this testimony, the suppression court, whose role it was to judge the credibility of witnesses, *Neely, supra,* concluded that the officers had a "reasonable belief [that] their safety was in jeopardy," *Cortez, supra.* As the court's finding is supported by sufficient evidence, it must be affirmed. *Lopez, supra.*

■ Finally, appellant argues that the cocaine recovered from his possession should have been suppressed because the search warrant obtained by police was illegally executed. Specifically, appellant claims that since the audible implant was never activated by the opening of the package, an explicit prerequisite to the execution of the warrant, the search of his person was illegal. We reject appellant's argument. The authority of the police to search appellant was not premised on the warrant but rather on their reasonable suspicion that

criminal activity was afoot, *Terry, Patterson, supra,* and their belief that appellant might be armed. As noted, the police were well aware that appellant's companion, Kelly, was a drug dealer and that the premises upon which appellant was ultimately arrested were a center for drug activity. Police also knew that the package appellart and Kelly were about to remove from the premises contained in excess of three pounds of marijuana. Further, as police approached the men and identified themselves, Kelly ran away and appellant ran toward his vehicle. These circumstances, in addition to the judicially-recognized fact that individuals involved in the drug trade commonly carry weapons, caused reasonable concern that appellant might be armed. Thus, according to *Terry* and *Patterson,* the police were authorized to pat-down appellant, and when the pat-down failed to reveal the nature of the large bulge in appellant's pocket, the police were justified in removing what turned out to be keys and 54 ounces of cocaine. Hence, since the authority of the police to detain appellant was based on their reasonable suspicion that he might be armed, and not upon the search warrant, we reject appellant's final claim.

Judgment, of sentence affirmed.