672 A.2d 1359

**Barbara MORGAN and Joseph Morgan,
Her Husband, Appellants,**

**v.**

**John A. McPHAIL, M.D.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1995.

Filed March 15, 1996.

Michael Pribanic, White Oak, for appellant.

John A. Bass, Pittsburgh, for appellee.

Before CAVANAUGH, JOHNSON and CERCONE, JJ.

JOHNSON, Judge:

In this appeal, we are asked to consider whether Pennsylvania law recognizes a cause of action where a doctor failed to obtain his patient's informed consent to the administration of an intercostal nerve block. Because we find that we are bound by prior case law which limits actions for informed consent to situations involving surgical or operative procedures, we are constrained to affirm the trial court order that granted Dr. John A. McPhail's preliminary objections to those paragraphs of the complaint which involved informed consent. Nonetheless, we are compelled to express our reservations regarding this result.

In October 1988, Barbara Morgan fractured two of her ribs. In December 1988, due to persistent lingering pain in and around her ribs, she sought treatment from John A. McPhail, M.D. Dr. McPhail attempted to relieve Barbara's pain by performing an intercostal nerve block, which involves injecting anesthesia into the area around the ribs. Following that procedure, Barbara became very weak and short of breath and telephoned Dr. McPhail to inform him of her condition. Thereafter, she reported to the hospital for emergency medical care, where it was determined that she had sustained a

collapsed right lung as a result of the intercostal nerve block. Barbara and her husband, Joseph, then filed suit against Dr. McPhail, alleging, among other things, that he had failed to obtain Barbara's informed consent prior to performing that procedure. Dr. McPhail filed preliminary objections in the nature of a demurrer as to those paragraphs of the Morgans' complaint which concerned the doctrine of informed consent, arguing that informed consent is necessary only for surgical or operative procedures. The trial court agreed and, accordingly, granted a demurrer. The Morgans filed a motion for reconsideration, which was denied. The Morgans then filed a petition for permission to appeal pursuant to 42 Pa.C.S. § 702(b), which was granted. *See* Order of Court, dated May 1, 1991. This appeal followed.

On appeal, the Morgans assert that the trial court erred in granting Dr. McPhail's preliminary objections. Specifically, they contend that the trial court erred in determining that the doctrine of informed consent does not apply to the facts of this case.

■ Our scope of review in an appeal from an order granting preliminary objections in the nature of a demurrer is plenary. *Love v. Cramer*, 414 Pa.Super. 231, 606 A.2d 1175, *appeal denied*, 533 Pa. 634, 621 A.2d 580 (1992). Moreover,

> [a]ny doubt as to whether a demurrer should be sustained is to be resolved against the moving party. Furthermore, "we accept as true all well-pleaded material facts in the complaint, as well as all inferences reasonably deducible therefrom." Preliminary objections should be sustained only when it appears with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff.

*Id.* at 233, 606 A.2d at 1177, quoting *Baker v. Magnetic Analysis Corp.*, 347 Pa.Super. 188, 192, 500 A.2d 470, 472 (1985).

The doctrine of informed consent "grants the competent patient the right to medical self-determination regarding an operative or surgical procedure." *Sinclair by Sinclair v. Block*, 534 Pa. 563, 568, 633 A.2d 1137, 1139 (1993), citing *Gray*

*v. Grunnagle,* 423 Pa. 144, 223 A.2d 663 (1966). Our supreme court has held that

> a physician or surgeon who fails to advise a patient of material facts, risks, complications and alternatives to surgery which a reasonable [person] in the patient's position would have considered significant in deciding whether to have the operation is liable for damages which ensue, and the patient need not prove that a causal relationship exists between the physician's or surgeon's failure to disclose information and the patient's consent to undergo surgery.

*Gouse v. Cassel,* 532 Pa. 197, 202, 615 A.2d 331, 333 (1992). "The basis of an action for a lack of informed consent is that when a physician touches a patient a technical battery occurs, unless that touching is done with the patient's consent." *Wu v. Spence,* 413 Pa.Super. 352, 355–56, 605 A.2d 395, 397 (1992), *appeal dismissed,* 534 Pa. 309, 632 A.2d 1294 (1993), citing *Gray, supra.* The goal of this doctrine "is to provide the patient with material information necessary to determine whether to proceed with the surgical or operative procedure or to remain in the present condition." *Sinclair, supra,* at 570, 633 A.2d at 1140.

▋ To determine whether the trial court erred in concluding that the doctrine of informed consent does not apply to an intercostal nerve block, it is necessary to understand the manner in which the law in this area has developed. In *Cooper v. Roberts,* 220 Pa.Super. 260, 263, 286 A.2d 647, 648 (1971), *appeal denied,* a patient underwent a gastroscopic examination, during which doctors lowered a fiberscope into her stomach "to photograph that area for purposes of diagnosis and treatment." Doctors never informed the patient of any collateral risks associated with the procedure. Rather, they assured her that the examination was "a relatively simple diagnostic procedure and that (there) should not be any trouble with it." *Id.* at 263, 286 A.2d at 648. However, during the examination, the patient's stomach was punctured, and she required emergency surgery to seal the perforation. The patient filed suit alleging negligence and lack of informed consent. At trial, the jury rendered a verdict in favor of the

doctors. On appeal, this Court was asked to determine the proper standard against which the doctors' conduct should have been weighed. Preliminarily, we noted that

> [t]here was some dispute as to whether the gastroscopic examination qualified as a surgical operation. [The patient] was anesthetized and transported to a special area for the examination, occurrences which seem to closely relate the examination to the normal surgical procedure. However, if there is any distinction between the two types of procedures, such a distinction is immaterial for purposes of this issue. *The same duty of disclosure obtains whether or not the treatment can be technically termed operative.*

*Id.* at 265 n. 2, 286 A.2d at 649 n. 2 (emphasis added). Thus, we concluded that the patient was entitled to be informed of those risks that a reasonable person would consider material to his or her decision to undergo treatment.

However, *Cooper* appears to be the only case in which a court has stated that physicians have the same duty of disclosure concerning surgical or non-surgical procedures. In every case since *Cooper,* courts of this Commonwealth have steadfastly refused to apply the doctrine of informed consent to any procedure or treatment that is not operative or surgical. For example, in *Malloy v. Shanahan,* 280 Pa.Super. 440, 442–43, 421 A.2d 803, 804 (1980) (plurality), the sole question on appeal was "whether a doctor who renders treatment to a patient consisting of the therapeutic administration of a drug with known potentially dangerous side effects is obligated to secure the patient's informed consent to the treatment. . . ." In that case, a patient became partially blind after orally taking prescription drugs over a period of twelve years. The court, recognizing that informed consent is necessary prior to a surgical operation, concluded that such consent "ha[d] not been extended to therapeutic treatment. . . ." *Id.* at 443, 421 A.2d at 804.

In 1985, this Court was again asked to consider whether the doctrine of informed consent was applicable to the oral administration of prescription drugs. *Boyer v. Smith,* 345 Pa.Super. 66, 497 A.2d 646 (1985). After looking to *Malloy* for guidance,

we concluded that the doctrine should be limited to only those cases involving surgical or operative procedures. In reaching this conclusion, we reasoned that

> [i]n *Gray, supra,* our supreme court expressly grounded its adoption of the informed consent doctrine upon the legal theory that the performance of a medical procedure without a patient's informed consent constitutes a technical assault or battery. To now expand the doctrine's current applicability to cases involving the administration of therapeutic drugs would be to radically depart from, and indeed obliterate, the foundation upon which the *Gray* decision stands. Not only are we unpersuaded that such expansion is necessary, we consider ourselves bound by our supreme court's pronouncements in *Gray*.

*Id.* at 72, 497 A.2d at 649.

Subsequently, the United States District Court for the Eastern District of Pennsylvania, applying Pennsylvania law, considered whether the administration of prescriptive drugs required informed consent when such drugs were injected rather than taken orally. *Karibjanian v. Thomas Jefferson Univ. Hosp.,* 717 F.Supp. 1081 (E.D.Pa.1989). The court recognized that *Boyer* was the leading Pennsylvania case on the issue of informed consent as it relates to the administration of drugs, but stated that "[t]he middle ground over which the *Boyer* court leapt includes a case like the plaintiff's in which the patient is injected with a substance. A touching occurs, perhaps a painful one, yet it is something less than surgery." *Id.* at 1084. That court determined that

> [w]hen it is the need for an injection which the patient disputes, it is reasonable to impose a duty of informed consent. For example, there are some drugs which may be administered orally or by injection; the decision to inject such a drug should be made only with the patient's informed consent. On the other hand, when it is the substance administered, not the method of administration, which is challenged ... it is absurd to invoke the duty of informed

consent simply because the physician or nurse must touch the patient to inject the drug.

*Id.*

This Court addressed a similar issue in *Wu v. Spence, supra.* In that case, a patient was treated intravenously with an antibiotic. She brought suit alleging that her doctor failed to inform her of the potential risk of peripheral neuropathy as a result of the treatment. The trial court found that the patient failed to state a cause of action based upon lack of informed consent and granted a nonsuit in favor of the doctor. On appeal, the patient asserted that the touching involved with the intravenous administration of the drug was sufficient to form the basis of the battery required to support a cause of action for lack of informed consent. In the alternative, she urged this Court to adopt a negligence standard for informed consent. As to the patient's first contention, we determined that the injection of the drug was not sufficient to support a cause of action because the patient claimed damage caused by the *action* of the drug, not by *insertion* of the needle. *Id.* at 355, 605 A.2d at 396, citing *Karibjanian, supra.* Further, we stated that informed consent has been consistently limited to a battery theory, and we declined to adopt a negligence theory.

Finally, in the recent case of *Hoffman v. Brandywine Hosp.,* 443 Pa.Super. 245, 661 A.2d 397 (1995), Helen Hoffman filed suit on behalf of her mother (the patient) after she died as a result of contracting the AIDS virus from contaminated blood she received during a transfusion. Hoffman maintained that the doctor improperly failed to obtain the patient's informed consent before administering the blood transfusions. The court stated that "when surgical or operative procedures are involved, a physician must obtain informed consent as to injected drugs." *Id.* at 254, 661 A.2d at 401. It explained that "[b]oth the method of insertion and the potential latent harm of any substance injected, inserted, or otherwise introduced into the patient's body and left there during surgery may be the subject of informed consent." *Id.* at 254, 661 A.2d at 401 (emphasis omitted). However, in *Hoffman,* the patient was given the contaminated transfusion approximately seven hours

after surgery. Thus, because it was not introduced during surgery, this Court concluded that the doctor was not required to disclose the attendant risks and alternatives to transfusion.

In light of the foregoing authority, we are constrained to conclude that under the current state of the law in Pennsylvania, the doctrine of informed consent is applicable only when a patient is subject to a surgical or operative procedure. *Compare Sinclair, supra* (doctrine of informed consent inapplicable to physician's use of forceps to facilitate natural delivery); *Matukonis v. Trainer,* 441 Pa.Super. 570, 657 A.2d 1314 (1995) (doctrine of informed consent inapplicable to chiropractic manipulation of patient's neck, as it was not surgical in nature), *alloc. granted,* 542 Pa. 648, 666 A.2d 1057 (1995); *Dible v. Vagley,* 417 Pa.Super. 302, 612 A.2d 493 (1992) (doctrine of informed consent inapplicable to radiation treatment), *appeal denied,* 535 Pa. 619, 629 A.2d 1380 (1993); *with Stover v. Assoc. of Thoracic and Cardiovascular Surgeons,* 431 Pa.Super. 11, 635 A.2d 1047 (1993) (physician required to disclose the attendant risks and alternatives to surgical implantation of prosthetics); *Sauro v. Shea,* 257 Pa.Super. 87, 390 A.2d 259 (1978) (where a drug was administered intravenously *during surgery,* the doctrine of informed consent was applicable). Our reservations regarding the injustice of this rule do not free us from the constraints imposed upon us as an intermediate appellate court. The primary role of intermediate appellate courts "is to apply existing law to the great volume of cases that come before us." *Hatchard v. Westinghouse Broadcasting Co.,* 350 Pa.Super. 1, 22, 504 A.2d 211, 223 (1986), *rev'd on other grounds,* 516 Pa. 184, 532 A.2d 346 (1987). Nonetheless, a second function of the intermediate appellate court is to stimulate revision in the law by the highest court where reform or clarification is necessary. *Id.* We believe that this is such a case. Although we are bound by *Sinclair, Hoffman, Wu,* and *Boyer* and must affirm the trial court order granting Dr. McPhail's preliminary objections, we express our reservations regarding both the battery theory of informed consent and the distinction between surgical and non-surgical procedures under that theory.

Indeed, we are not the first members of this Court to question whether the battery theory should be abandoned in favor of a negligence standard. In *Malloy, supra,* Judge Hoffman authored a lengthy dissent, in which he cited with approval the "overwhelming trend among courts in other jurisdictions toward recognizing the doctrine as being grounded on *negligence* rather than battery." *Id.* at 445, 421 A.2d at 805 (citing cases). He explained that courts following this trend "have recognized that the failure to obtain a patient's informed consent does not correspond to the traditional concept of battery because the doctor's omission rarely results from a willful intent to injure the patient." *Id.* at 446, 421 A.2d at 805–06. Similarly, "the physician's culpable conduct, the failure to inform, does not itself involve a 'touching' of the patient." *Id.* at 446, 421 A.2d at 806. Judge Hoffman recognized that the doctrine of informed consent is based upon the principle that each adult of sound mind has the right to determine what is done with his or her body. *Id.,* citing *Schloendorff v. Society of New York Hosp.,* 211 N.Y. 125, 126, 105 N.E. 92, 93 (1914). In order to make such determinations, a patient must be given adequate information to knowledgeably evaluate the options available and the risks attendant to those options. *Id.* at 447, 421 A.2d at 806. Thus, Judge Hoffman reasoned that "[w]here a physician prescribes a drug without properly informing the patient of the risks involved, he invades the patient's bodily integrity and violates the patient's concomitant right to know just as if he had performed a surgical operation without first obtaining the patient's informed consent." *Id.*

Similarly, although the *Wu* court determined that informed consent was not required for administration of therapeutic drugs under the battery theory, it recognized that

[i]t may be time for the Supreme Court to reconsider its decision in *Gray.* The greater use of various drug treatments has led to a situation where the risk associated with adverse side effects may be considerable. Further, there is the possibility that in light of adverse side effects, a patient may wish to chose [sic] an alternative treatment. A patient's decision to undergo drug therapy should be no less

informed than a decision to undergo surgery. The law should require that a physician provide his patient with all available information and options. We find the dissenting opinion of Judge Hoffman in *Malloy* ... persuasive in regard to adopting a negligence standard to eliminate any present confusion in the law. Under the present development of the law, whether or not to make such a change in the law is not within the province of this Court.

*Wu, supra,* at 356–57, 605 A.2d at 397. *See also* Lynne Heckert, *Informed Consent in Pennsylvania—The Need for a Negligence Standard,* 28 Vill.L.Rev. 149 (1982–83) (explaining development of informed consent in Pennsylvania and suggesting adoption of negligence standard).

Moreover, under the current state of the law, which requires a touching to establish a cause of action, we see no logical reason for the distinction between a surgical procedure and a non-surgical touching, such as an injection. In *Stover,* the court acknowledged the problematic nature of this distinction, stating that it would be less than candid if it failed to "admit to a degree of artificiality in creating a distinction which limits the touching required for actionable informed consent to be the surgical cut." *Stover, supra,* at 26 n. 6, 635 A.2d at 1054 n. 6. However, it concluded that "until such time as our supreme court expands the technical assault definition, such artificiality must hold sway." *Id.* The *Hoffman* Court echoed this concern. *See Hoffman, supra,* at 255 n. 3, 661 A.2d at 402 n. 3. Further, Judge Beck wrote separately in *Hoffman* to express her discomfort with the distinction between operative and non-operative procedures in our informed consent law. *Id.* at 254–55, 661 A.2d at 402.

Thus, although we have reservations regarding the law as it now stands, we are constrained to affirm the order granting Dr. McPhail's preliminary objections to those paragraphs of the complaint which concerned the doctrine of informed consent.

Order Affirmed.

CAVANAUGH, J., files a concurring statement.

CAVANAUGH, Judge, concurring:

Since I see no reason to extend the informed consent doctrine beyond its present confines, or to redefine the doctrine, I concur in the result only.