**COMMONWEALTH of Pennsylvania**

v.

**Richard MONTINI, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 7, 1997.
Filed April 27, 1998.

Nicholas Mancini, Newtown, for appellant.

Troy E. Leitzel, Deputy Dist. Atty., Doylestown, for Com., appellee.

Before CIRILLO, President Judge Emeritus, and JOHNSON and HOFFMAN, JJ.

CIRILLO, President Judge Emeritus:

Richard Montini appeals from the judgment of sentence entered in the Court of Common Pleas of Bucks County. We affirm.

During the early morning hours of October 13, 1996, Doylestown Police Officer Wayne Jones was stationed in a marked police cruiser in the Mellon Bank parking lot located at the intersection of State and Main Streets in Doylestown. At approximately 2:30 a.m., Officer Jones observed Montini's red Volks-

wagen sedan stopped at a traffic signal at the intersection of Main and State Streets. Officer Jones then watched Montini turn onto South Main Street and encounter another vehicle that was in the process of parallel parking. Montini crossed entirely into the northbound lane of Main Street to avoid the parking car, a maneuver Jones considered excessive under the circumstances. As a result Jones decided to follow Montini. While trailing Montini for several minutes, Jones observed Montini driving in a very erratic manner. Specifically, Jones observed the following: on Oakland Avenue Montini's car "accelerated and decelerated in an abnormal fashion"; on East State Street Montini's vehicle weaved within his lane of travel and portions of the car twice crossed the double yellow lines. Immediately after Montini turned off East State Street Jones activated his emergency lights and Montini pulled his car off to the side of the road.

Upon request Montini rolled down his window and handed Jones his driver's license, registration, and insurance card. While retrieving Montini's identification, Jones smelled a strong odor of alcohol emanating from the vehicle. Jones asked Montini to exit the vehicle and then proceeded to perform several field sobriety tests.

First, Jones conducted the "index finger to the tip of the nose test." Jones instructed Montini to "stand erect, head slightly back, close your eyes, extend your arms directly to the side, parallel to the ground. And with the finger that I tell you, touch it to the tip of your nose." Montini was unable to appropriately comply, as he failed to close his eyes or extend his arms as directed even though he did touch his finger to his nose. Jones next conducted the "leg extension" test. He instructed Montini to stand with his feet together and then lift one leg approximately ten inches from the ground and hold the leg in that position until instructed to lower it. Montini also failed this test because he lowered his leg prior to being instructed to do so. Third, Jones performed the "finger counting" exercise. He directed Montini to count to five by touching each digit of one hand to the thumb of the other. Montini was unable to complete this task; Montini lost count. Finally, Jones performed the "heel-to-toe test." This test required Montini to walk seven paces on a line, each step made heel to toe. Although Montini took the requisite steps he failed to take the steps as directed, heel-to-toe.

Based upon all of these circumstances Jones concluded that Montini was incapable of safe driving and transported him to Doylestown Hospital where he submitted to a blood test at 3:24 a.m. The results of the blood test registered Montini's blood alcohol content (BAC) at .19%. Montini was charged with driving under the influence of alcohol, 75 Pa.C.S.A. § 3731(a)(1), and driving while his blood alcohol content was 0.10% or greater, 75 Pa.C.S.A. § 3731(a)(4). Following the denial of Montini's motion to suppress, Montini was convicted at a non-jury trial of both charges. This appeal followed. Montini presents the following issues for our consideration:

(1) Whether the trial court erred in failing to suppress evidence of the defendant's blood alcohol content based upon the arresting officer's lack of probable cause for the stop, investigation and search of the defendant?

(2) Whether the trial court erred in permitting into evidence, evidence of defendant's blood alcohol content without first presenting expert testimony concerning defendant's blood alcohol content at the time he was driving his vehicle?

(3) Whether the prosecution presented evidence sufficient to find defendant guilty of 75 Pa.C.S.A. § 3731(a)(1)?

■■■ Montini first claims that the suppression court erred in refusing to suppress evidence of his blood alcohol content. Initially, we note our standard of review of the denial of a suppression motion. When reviewing an order denying a motion to suppress evidence, we must determine whether the factual findings of the trial court are supported by the evidence of record. *Commonwealth v. Jackson*, 451 Pa.Super. 129, 132–34, 678 A.2d 798, 800 (1996). In making this determination, this court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of

the record as a whole, which remains uncontradicted. *Id.* Additionally, it is exclusively within the province of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony. *Commonwealth v. Fitzpatrick,* 446 Pa.Super. 87, 90–92, 666 A.2d 323, 325 (1996). If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous. *Id.*

█ Montini asserts that Jones' observations did not provide sufficient justification for subjecting him to an investigatory traffic stop. In order to make an investigatory traffic stop, an officer must possess specific and articulable facts justifying a reasonable belief that one has violated the Vehicle Code. *See Commonwealth v. Whitmyer,* 542 Pa. 545, 668 A.2d 1113 (1995); *Commonwealth v. Leighty,* — Pa.Super. ——, 693 A.2d 1324 (1997). Here, Officer Jones observed over a prolonged period of time Montini swerve excessively to avoid a car in the midst of parallel parking, weave within his lane of travel, accelerate and decelerate in an abnormal fashion, and cross the double-yellow center line of the road. These facts are sufficient to justify the traffic stop; based upon his observations Officer Jones could reasonably believe that Montini was violating the Vehicle Code due to his observations of erratic driving. *Whitmyer, supra* ; *see Commonwealth v. Lawrentz,* 453 Pa.Super. 118, 683 A.2d 303 (1996) (officer's observations of erratic driving sufficient to support an investigatory traffic stop).

█ Montini asserts that even if Officer Jones lawfully stopped him, Officer Jones lacked probable cause to arrest him following his failure of the field sobriety tests. We do not agree. Considering that Officer Jones observed Montini's erratic and unsteady driving, strong emanations of alcohol from Mon-

tini's car and his person, as well as Montini's failure to pass any of the four field sobriety tests, we conclude that Officer Jones possessed probable cause to arrest Montini for driving while intoxicated. Accordingly, the suppression court did not err in refusing to suppress the evidence of Montini's BAC. *Fitzpatrick, supra.*

Montini next contends that the trial court erred in convicting him of violating 75 Pa. C.S.A. § 3731(a)(4). Specifically, Montini claims that the trial court should not have admitted evidence of his BAC to support his conviction under this subsection because the Commonwealth did not present expert "relation-back" testimony.[1] Without the relation back testimony, Montini continues, the Commonwealth could not have proven beyond a reasonable doubt that he had a BAC of 0.10% at the time he was driving.

Section 3731(a)(4) of the Motor Vehicle Code provides:

> **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle:
>
> (4) while the amount of alcohol by weight in the blood of the person is 0.10% or greater; ...

75 Pa.C.S.A. § 3731. Section 3731(a)(4) of the Motor Vehicle Code "is limited in focus" as "[i]t makes one's blood alcohol content **while** driving the pivotal issue." (emphasis in original). *Commonwealth v. Modaffare,* 529 Pa. 101, 104, 601 A.2d 1233, 1235 (1992). *See also Commonwealth v. Allen,* 394 Pa.Super. 127, 575 A.2d 131 (1990) (Cirillo, P.J.E., dissenting) (stressing the importance of the Commonwealth's burden of proving that defendant's BAC is 0.10% or above **at the time he is driving**); *Commonwealth v. Slingerland,* 358 Pa.Super. 531, 518 A.2d 266 (1986) (Cirillo, P.J.E., dissenting) (same).

In *Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992) and *Modaffare, supra,*

---

1. Relation back or retrograde extrapolation is the process of projecting data, by using inferences, into an unknown area and thus achieving a conjectural knowledge of the unknown. *See* Robert J. Schefter, *Under the Influence of Alcohol Three Hours After Driving: The Constitutionality of the (A)(5) Amendment to Pennsylvania's DUI Statute,* 100 Dick.L.Rev. 441 (1996). Typically, an expert proffering retrograde extrapolation evidence will apply several factors to the operator's blood alcohol results and arrive at an educated estimation of the operator's BAC at the time he or she was driving. These factors include but are not limited to the rate of alcohol absorption and evaporation, the lapse of time between the testing and operation of the vehicle, and the lapse of time between the operator's last drink and the operation of the vehicle. *Id.*

our supreme court recognized that "a person's blood alcohol level fluctuates with the passage of time, such that the level gradually rises after drinks have been consumed until a peak is reached roughly one hour after the drinking has ceased, and that, thereafter the level declines." *Jarman,* 529 Pa. at 96–98, 601 A.2d at 1231; *Modaffare,* 529 Pa. at 105, 601 A.2d at 1235. With this observation squarely in mind, the court iterated the general standards for determining if and when the Commonwealth would be required to proffer expert relation back testimony to secure a conviction under 75 Pa.C.S.A. § 3731(a)(4):

> In cases where test results show levels of alcohol significantly above 0.10% and where blood samples have been obtained soon after suspects have been stopped, there is a very strong inference that blood alcohol levels were in the prohibited range while driving. However, ... where the blood test result barely exceeded the 0.10% level and the lapse of time between driving and the taking of the blood sample was not insignificant, the inference of guilt is weakened.

*Jarman,* 529 Pa. at 96–98, 601 A.2d at 1231; *Modaffare,* 529 Pa. at 104–06, 601 A.2d at 1235. In articulating these standards, the supreme court concluded that when an operator's BAC provides only a weak inference that his or her BAC level was 0.10% or above while driving, a conviction based upon the BAC test alone could not stand because the factfinder would be engaging in speculation as to whether appellant's blood alcohol level was at or above 0.10% at the critical time, i.e., while driving. *Id.; Modaffare, supra.*

Subsequent to *Jarman* and *Modaffare,* this court grappled with the difficult questions of determining what amounted to a BAC significantly above 0.10% and when testing was "soon after suspects have been stopped" for purposes of determining whether the Commonwealth was required to offer expert relation-back testimony to secure a conviction under 75 Pa.C.S.A. § 3731(a)(4). *See, e.g., Commonwealth v. Stith,* 434 Pa.Super. 501, 644 A.2d 193 (1994) (requiring the Commonwealth to offer expert testimony to

relate back a 0.12% BAC test result taken forty minutes after being stopped); *Commonwealth v. Proctor,* 425 Pa.Super. 527, 625 A.2d 1221 (1993) (evidence of a 0.179% BAC taken approximately two hours after being stopped was insufficient to support conviction under 75 Pa.C.S.A. § 3731(a)(4) absent expert extrapolation testimony); *Commonwealth v. Kasunic,* 423 Pa.Super. 112, 620 A.2d 525 (1993) (evidence of BAC of 0.21% taken fifty minutes after driving did not require the Commonwealth to provide expert relation back testimony); *Commonwealth v. Osborne,* 414 Pa.Super. 124, 606 A.2d 529 (1992) (defendant's BAC fifty minutes after arrest of 0.1488% required Commonwealth to proffer expert relation back testimony to secure a conviction under 75 Pa.C.S.A. § 3731(a)(4)).

In *Osborne, supra,* a panel of this court alluded to the practical problems arising from the application of *Jarman* and *Modaffare* :

> [T]he supreme court did not draw a bright numerical line between what it would consider to be a minimal upward departure suggesting a weak inference of guilt and what would constitute a significant upward deviation which would give rise to a strong inference of guilt. In like vein, the supreme court failed to establish a temporal cut-off for the drawing of a suspect's blood to indicate either a weak or a strong inference of guilt.

*Osborne,* 414 Pa.Super. at 128, 606 A.2d at 531.

In *Commonwealth v. Yarger,* 538 Pa. 329, 648 A.2d 529 (1994), the supreme court proposed a solution to the uncertainty created by the *ad hoc* approach annunciated in *Jarman* and *Modaffare.* Specifically, the court held that in cases where the defendant's BAC was significantly above 0.10% and the time between driving and the administering of the blood test was relatively short, expert relation back testimony is not required to prove that a driver operated a vehicle with a blood alcohol content (BAC) of 0.10% or greater.[2] *Id.* at 333–35, 648 A.2d at 531.

---

2. Arguably, by utilizing expansive language in its holding, the *Yarger* court desired to relieve the

The court explained that in these cases the Commonwealth was only required to make a "prima facie case" that the defendant's BAC registered at least 0.10%. *Id.* Thus, the court explained, "once the Commonwealth has established that the driver's blood alcohol content reflects an amount above 0.10%, the Commonwealth has made a *prima facie* case under 75 Pa.C.S. § 3731(a)(4)." *Id.* The court continued, "the defendant is permitted to introduce expert testimony to rebut the Commonwealth's *prima facie* evidence." *Id.* (emphasis in original). The court stated that its holding was premised upon the recognition that a "case-by-case review" of convictions under 75 Pa.C.S.A. § 3731(a)(4) was "unworkable." *Id.* at 335, 648 A.2d at 532.

■ Recognizing, of course, that *Yarger* and its progeny are the law of this Commonwealth, we are duty bound to find that Montini's conviction under section 3731(a)(4) must stand. Montini's blood test taken approximately 55 minutes after driving revealed that his BAC was 0.19%. These facts are almost identical to those in *Yarger.* Accordingly, applying the *Yarger* rule, we first note that the Commonwealth was not required to proffer any expert retrograde extrapolation evidence. The Commonwealth presented *prima facie* evidence that Montini's BAC was above 0.10% and Montini did not present any expert retrograde extrapolation evidence that may have rebutted the Commonwealth's evidence. Conviction under *Yarger*'s interpretation of section 3731(a)(4) was, therefore, proper.

We submit, however, that the supreme court may wish to revisit its *Yarger* decision for two compelling reasons. First, as the law presently stands, in *Yarger*-type cases, the burden to disprove an element of the offense, i.e., that the defendant had a BAC of 0.10% at the time he was driving, we feel impermissibly lies with the defendant. That is, a person charged under section 3731(a)(4) is now required to rebut the inference with

scientific testimony that his BAC was above 0.10% at the time that he was driving. *See Yarger, supra.* Such a result is unreasonable, because it relieves the Commonwealth of its burden of proving beyond a reasonable doubt each and every element of the offense. *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Commonwealth v. Santiago,* 376 Pa.Super. 54, 545 A.2d 316 (1988). *See also Commonwealth v. Hilbert,* 476 Pa. 288, 297, 382 A.2d 724, 729 (1978) ("[A] state carries a never shifting burden of proof beyond a reasonable doubt of all of the elements of a crime, such elements being contained in either statutory or common-law definitions.").

Second, the present state of the law does not delineate the threshold levels of lapsed time and BAC or a function of the two that would relieve the Commonwealth from offering expert relation back testimony to secure a conviction under section 3731(a)(4). *See Commonwealth v. Curran,* 700 A.2d at 1334, 1336 (Pa.Super.1997) (Schiller, J. concurring). That is, the court in *Yarger* did not articulate a bright-line temporal departure or upward deviation in BAC or a particular function of the two to determine when the *Yarger* rule would apply. Consequently, although we are certain after *Yarger* that cases with facts identical to *Yarger* do not need expert retrograde extrapolation testimony and cases with facts similar to *Jarman* and *Modaffare* will almost always require the Commonwealth to proffer expert relation back testimony, courts reviewing cases that fall between the two extremes or do not fit securely within the factual bases of either *Yarger* or *Jarman* and *Modaffare* will be plagued by the same uncertainty problem that troubled courts post *Jarman* and *Modaffare* and pre-*Yarger.* As our learned colleague the Honorable Berle Schiller explains in his concurring opinion in *Curran, supra,* without clearly articulated parameters, application of the principles espoused in *Yarger* will invariably

Commonwealth from presenting expert relation back testimony in all DUI cases. Support for this reading is found in a footnote of the decision wherein the court *cites* then newly promulgated section 3731(a)(5). This subsection, which has since been found unconstitutional in *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162

(1996), eliminated the Commonwealth's need to proffer relation back evidence if the BAC test was taken within three hours of driving and the result was above 0.10%. Consequently, the supreme court may wish to revisit *Yarger* to clarify the scope of its holding.

continue to be inconsistent and unpredictable.

> For instance, [a] defendant [could have] a higher blood alcohol reading than the defendant in *Yarger*, but the lapse of time between [a] [defendant]'s driving and taking the blood [could be substantially greater] than in *Yarger*. At what point does one factor outweigh the other?

*Curran*, 700 A.2d at 1336.

Presently, except for *Jarman* and *Modaffare* or *Yarger* factual scenarios, the determination of whether the Commonwealth is required to present expert testimony to secure a conviction under section 3731(a)(4) remains almost in the exclusive domain of the trial court. We believe that such a result is arbitrary and, thus, improper. The trial court, in most cases, is free to determine which finders-of-fact will have the benefit of expert testimony to aid their determination as to whether the defendant possessed a BAC of 0.10% at the time he or she was driving. In cases where the trial court determines that expert testimony is unnecessary, the fact-finder will be free to engage in speculation as to whether the defendant's BAC was above the legal limit of 0.10 % at the time he was driving.[3] *See Commonwealth v. Paschall*, 333 Pa.Super. 323, 482 A.2d 589 (1984) (a criminal conviction cannot be based upon impermissible speculation); *Commonwealth v. Croll*, 331 Pa.Super. 107, 480 A.2d 266 (a criminal conviction cannot be based on mere

surmise or conjecture). However, in cases where the trial court requires the Commonwealth to prove its case *via* expert testimony, the fact-finder will have before it a scientific method to aid in its determination.[4]

 In his final issue, Montini asserts that the Commonwealth presented insufficient evidence to support his conviction under 75 Pa.C.S.A. § 3731(a)(1). In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Swann*, 431 Pa.Super. 125, 635 A.2d 1103 (1994). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Swerdlow*, 431 Pa.Super. 453, 458, 636 A.2d 1173, 1176 (1994) (citing *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988)). *See also Commonwealth v. Chmiel*, 536 Pa. 244, 639 A.2d 9 (1994). Furthermore, a mere conflict in the testimony of the witnesses does not render the evidence insufficient because "it is within the province of the factfinder to determine the weight to be given to the testimony and to believe all, part, or none

---

**3.** It is common knowledge that the level of alcohol in the bloodstream is not static. Depending upon various factors such as tolerance to alcohol, weight, and food consumption, a person's BAC can increase for a period of time prior to dissipating. *See generally* Jennifer L. Pariser, *In Vino Veritas: The Truth about Blood Alcohol Presumptions in State Drunk Driving Laws*, 64 N.Y.U.L.Rev. 141 (1989). Therefore, in order for a fact-finder to determine whether a person who had a BAC of greater than 0.10% some period of time after he or she was driving, had a BAC of 0.10% while driving, the fact-finder must possess knowledge of how to "relate back" the BAC reading. *See* Mark J. Reasor, *Driving Under the Influence: Is Retrograde Extrapolation of Blood Alcohol Scientifically Valid?*, 9–FEB W.Va. Law. 14 (1996). Clearly such a calculation is beyond the knowledge and skill of the average person. *See generally Allen, supra* (Cirillo, P.J.E., dissenting); *Slingerland, supra* (Cirillo, P.J.E., dissenting).

**4.** We agree with Judge Schiller that:

> [T]he Commonwealth should bear the burden of producing relation back testimony in all cases in which it seeks to introduce a blood/alcohol test result; otherwise, the result standing alone calls for the jury to make a scientific determination related to blood/alcohol absorption rate without an adequate foundation.

*Curran*, 700 A.2d at 1336. In our view, the Commonwealth should be required to introduce expert relation back testimony in all cases where the Commonwealth seeks a conviction under section 3731(a)(4); anything less unfairly shifts the burden of proof to the defendant and permits the fact-finder to engage in unnecessary speculation. To permit the trier-of-fact to calculate a defendant's BAC at the time he was driving, without the benefit of expert testimony, would be akin to calculating a simple multiplication problem without knowing how to multiply.

of the evidence." *Commonwealth v. Moore*, 436 Pa.Super. 495, 501, 648 A.2d 331, 333 (1994) (citations omitted).

 In order to secure a conviction under section 3731(a)(1), the Commonwealth must prove that (1) the defendant was the operator of a motor vehicle and (2) during operation of the vehicle he was under the influence of alcohol to such a degree that rendered him incapable of safe driving. 75 Pa.C.S.A. § 3731(a)(1); *Commonwealth v. Kelley*, 438 Pa.Super. 289, 652 A.2d 378 (1994). In order to establish that a driver is unable to safely operate a vehicle, the prosecution must prove that alcohol has substantially impaired the normal mental and physical faculties required to operate the vehicle safely. *Commonwealth v. Kowalek*, 436 Pa.Super. 361, 647 A.2d 948 (1994). "[S]ubstantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions." *Id.* at 366, 647 A.2d at 950.

 Here, Officer Jones observed Montini driving in an erratic manner over a prolonged period of time. *See Id.* at 369, 647 A.2d at 952 (evidence of erratic driving is an important consideration in determining whether a driver is incapable of safe driving). Additionally, Montini failed all four field sobriety tests. *See Commonwealth v. Feathers*, 442 Pa.Super. 490, 660 A.2d 90 (1995) ("evidence that the driver was not in control of [him]self, such as failing to pass a field sobriety test, could establish the driver was under the influence of alcohol to a degree which rendered [him] incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving") (citation omitted)). Finally, Montini's blood alcohol level was 0.19% less than one hour after he was driving.[5] *See Kelley, supra* (explicitly acknowledging that a driver's BAC is relevant and admissible as evidence that the driver

was incapable of safe driving). Aggregating the above, it is clear that sufficient evidence existed to support Montini's conviction under 75 Pa.C.S.A. § 3731(a)(1). *Swann, supra.*

Judgment of sentence affirmed.

JOHNSON, J., filed a Concurring Opinion.

JOHNSON, Judge, concurring:

I concur in the result reached by the Majority in this case. I agree that: (1) the trial court did not err in refusing to suppress Montini's BAC; (2) the evidence was sufficient to find him guilty of DUI under 75 Pa.C.S. § 3731(a)(1); and (3) the prosecution was not required to proffer expert testimony concerning Montini's extrapolated BAC at the time he was driving. However, I write separately to express my concern regarding the Majority's discussion urging the Supreme Court of Pennsylvania to revisit the question of whether, in a prosecution under 75 Pa.C.S. § 3731(a)(4), the Commonwealth must always present expert testimony relating back the defendant's BAC test results to the time the defendant was driving.

The Majority submits that the present state of the law concerning relation back evidence in DUI prosecutions is faulty on two grounds. The Majority contends that under current law, the parameters defining when relation back testimony must be offered are ambiguous and that, in the absence of a rule uniformly requiring the Commonwealth to present such evidence, the defendant impermissibly bears the burden of proving his innocence.

I express no opinion as to the merit of these arguments. Rather, I note that after reviewing Montini's brief, I find nothing that resembles these arguments or supports the position advocated by the Majority. Montini merely asserts that, in order to establish each element of 75 Pa.C.S. § 3731(a)(4), the Commonwealth must always present expert

---

**5.** We note that unlike section 3731(a)(4), which explicitly limits evidence admissible to support a conviction to scientific evidence, section 3731(a)(1) is a general provision that provides no specific restraint upon the Commonwealth in the manner in which it may prove a violation. *See Commonwealth v. Loeper*, 541 Pa. 393, 663 A.2d 669 (1995). Thus, admission of a driver's BAC

without relating it back to the time he or she was driving does not invoke the same concerns as it does in seeking to prove a violation under 75 Pa.C.S.A. § 3731(a)(4) because the test results are "but one piece of the evidence to be considered ..." *See generally Commonwealth v. Phillips*, 700 A.2d 1281 (1997) (plurality decision).

testimony relating back the defendant's BAC to the time that he was arrested. He does not maintain that under the current state of the law it is unclear when expert testimony is required or that the burden of proof is impermissibly shifted. Yet, after concluding that extrapolation evidence was not required in the instant case, the Majority goes beyond that which is properly before it and expounds on a subject that, in the absence of being raised on appeal, is ill suited for our review at this time.

The Superior Court is an error correcting court and we are obliged to apply the decisional law as determined by the Supreme Court of Pennsylvania. *See Commonwealth v. Dugger,* 506 Pa. 537, 545, 486 A.2d 382, 386 (1985)(noting that "the formal purpose of the Superior Court is to maintain and effectuate the decisional law of this [Supreme] Court as faithfully as possible."); *Kafando v. State Farm Mut. Ins. Co.,* 704 A.2d 675, 677 (Pa.Super.1998). "Nonetheless, a second function of the intermediate appellate court is to stimulate revision in the law by the highest court where reform or clarification is necessary." *Morgan v. McPhail,* 449 Pa.Super. 71, 672 A.2d 1359 (1996), *aff'd,* 550 Pa. 202, 704 A.2d 617 (1997). However, at the same time, we may not act as appellate counsel, nor may we advocate positions not properly presented to us on appeal. *Commonwealth v. Wright,* 702 A.2d 362, 370 (Pa.Super.1997); *Commonwealth v. Genovese,* 450 Pa.Super. 105, 675 A.2d 331, 334 (1996).

Here, in challenging the law as it presently exists, without Montini's encouragement, the Majority oversteps these boundaries. Not only does Montini not object to the current law on relation back evidence, but on the facts of this case, relation back evidence clearly is not required. Thus, by expounding on the perceived frailties of the law relating to extrapolation evidence and stepping out of the argument as presented in Montini's brief, the Majority does not remedy an injustice. Simply put, the Majority's discussion does not touch the case. Instead, the Majority is merely airing its own views in an inappropriate forum. Accordingly, while I concur in the result, I cannot join the Majority's Opinion.