**Fink v. Bleyaert**

C.P. of Clearfield County, no. 95-1082-CD.

*Samuel Cohen,* for plaintiff.
*Andrew F. Adomitis,* for defendants.

REILLY, *P.J.,* August 3, 1999—On August 3, 1987, Brendon M. "Butch" Flanagan allegedly suffered a work-related injury that caused him to seek medical treatment from an array of health care providers. On July 6, 1993, Mr. Flanagan was referred to the Clearfield Hospital pain clinic for further evaluation. At that time, Archiel L. Bleyaert M.D. administered epidural steroid injections, as had other physicians since 1989. The course of injections was repeated on July 14, 1993, July 23, 1993 and August 24, 1993. On August 24, 1993, Mr. Flanagan suffered cardio-respiratory arrest and died on September 12, 1993.

Plaintiff, Linda Fink, as administratrix of the estate of Brendon M. Flanagan a/k/a/ Butch Flanagan, deceased, and on behalf of the next of kin filed a complaint and alleged, in part, that the epidural steroid injections were improperly administered and resulted in the cardio-respiratory arrest and the untimely death of Mr. Flanagan. A demand for recovery is also premised upon the failure of defendant Bleyaert and Richard C. Bedger M.D. to obtain a *sufficient* informed consent from Mr. Flanagan

in regards to the injections. Defendants Bleyaert and Bedger filed motions for partial summary judgment in this matter.

The issue before this court is whether defendants Bleyaert and Bedger are entitled to partial summary judgment with respect to plaintiff's informed consent claim, as informed consent is not required for nonsurgical procedures.

Motions for summary judgment are covered by Pa.R.C.P. 1035.2, which states:

"After relevant pleadings are closed, but within such time so as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2

Summary judgment should be granted if a review of the record demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Perry v. Middle Atlantic Lumbermens Association,* 373 Pa. Super. 554, 542 A.2d 81

(1988). When the defendant is the moving party, he may make the showing necessary to support the entry of summary judgment by pointing to materials which indicate that plaintiff is unable to satisfy an element of their cause of action. *Godlewski v. Pars Manufacturing Co.,* 408 Pa. Super. 425, 431, 597 A.2d 106, 109 (1991).

The appellate courts of this Commonwealth have historically interpreted the doctrine of informed consent as applying only to surgeons who perform operations without first securing the informed consent of the patient. *Friter v. Iolab Corp.,* 414 Pa. Super. 622, 626, 607 A.2d 1111, 1113 (1992). In determining whether the patient's consent to a surgical operation was "informed," one must consider whether the physician disclosed to the patient all of the facts, risks, and alternatives, which a reasonable person would deem significant in making a decision to undergo the recommended procedure. *Moure v. Raeuchle,* 529 Pa. 394, 404-405, 604 A.2d 1003, 1008 (1992); *Doe v. Dyer-Goode,* 389 Pa. Super. 151, 156, 566 A.2d 889, 891 (1989), *appeal denied,* 527 Pa. 587, 588 A.2d 509 (1990); *Rogers v. Lu,* 335 Pa. Super. 595, 485 A.2d 54 (1984). An operation performed without the patient's informed consent constitutes a battery, thus making the physician or physicians liable for any injuries regardless of whether the surgery was negligently performed. *Moure v. Raeuchle, supra,* 529 Pa. at 405, 604 A.2d at 1008; *Doe v. Dyer-Goode, supra,* 389 Pa. Super. at 155-56, 566 A.2d at 891; *Levenson v. Souser,* 384 Pa. Super. 132, 557 A.2d 1081 (1989), *appeal denied,* 524 Pa. 621, 571 A.2d 383 (1989); *Sagala v. Tavares,* 367 Pa. Super. 573, 533 A.2d 165 (1987), *appeal denied,* 518 Pa. 626, 541 A.2d 1138 (1988); see

also, *Gray v. Grunnagle,* 423 Pa. 144, 223 A.2d 663 (1966); *Smith v. Yohe,* 412 Pa. 94, 194 A.2d 167 (1963).

A claim of lack of informed consent has been characterized by the Pennsylvania Supreme Court as an action for assault and battery. *Gray, supra,* 423 Pa. at 144, 223 A.2d at 664. As a result, such a claim must be proven as a technical assault, rather than under a theory of negligence. *Gallegor v. Felder,* 329 Pa. Super. 204, 478 A.2d 34 (1984). Likewise, the Pennsylvania Superior Court has "consistently limited informed consent to a battery theory," and has refused to expand it. *Wu v. Spence,* 413 Pa. Super. 352, 356, 605 A.2d 395, 397 (1992).

Pursuant to the Superior Court's decision in *Shaw v. Kirschbaum,* 439 Pa. Super. 24, 653 A.2d 12 (1994), the Superior Court ruled that the informed consent doctrine applies only to surgical procedures. Later, in *Wu, supra* the Superior Court refused to extend the doctrine of informed consent to the injection of therapeutic drugs outside the realm of surgery. However, in *Morgan v. McPhail,* 449 Pa. Super. 71, 672 A.2d 1359 (1996), the Superior Court expressed extreme reservations about the battery theory of informed consent, as well as the distinction between surgical and nonsurgical procedures and implored the Supreme Court to reconsider the issue. *Morgan,* 449 Pa. Super. at 79, 672 A.2d at 1363. The Supreme Court in *Morgan,* 550 Pa. 202, 704 A.2d 617 (1997), granted allocatur on the sole issue of whether the informed consent doctrine should be extended to the administration of therapeutic drugs or whether it should be limited to surgical procedures. *Id.* The court refused to broaden the scope of the informed consent doctrine to include nonsurgical ad-

ministration of medication. Furthermore, the court held unequivocally that Pennsylvania does not recognize a cause of action for lack of informed consent in the administration of steroidal injections.

However, plaintiff, in the case at bar, suggests that, unlike the situation in *Shaw v. Kirschbaum,* 439 Pa. Super. 24, 653 A.2d 12 (1994), a physician who opts to discuss with the patient risks and complications of a non-surgical procedure and thereafter performs the same may be subject to liability for "negligently" obtaining the informed consent of a patient. In *Shaw,* suit was initiated against a physician for his alleged negligence in failing to disclose to a patient the risk of paralysis related to a particular surgical procedure. As an intermediate appellate court, the Superior Court felt obligated to follow the precedent set down by our Supreme Court. However, the trial court in *Shaw* found that: "[a]lthough Pennsylvania law imposes no duty upon Dr. Kirschbaum, a non-operating physician, to discuss the medically established risks associated with the surgical repair of her aneurysm, he voluntarily assumed this duty when he undertook to advocate that Mrs. Shaw travel to the Texas Heart Institute for the specific purpose to undergo the operation. Dr. Kirschbaum gratuitously expanded the scope of his duty to Mrs. Shaw when he undertook the 'service of persuading his patient to travel to the Texas Heart Institute for corrective surgery rather than merely referring her to the thoracic surgeon for an evaluation.' " *Id.* at 32, 653 A.2d at 16.

The trial court provided no legal basis upon which to find that appellant owed Mrs. Shaw a duty "to discuss the medically established risks" associated with the pro-

posed surgery. The law of this Commonwealth imposes this duty only upon the surgeon actually performing the procedure and neither that trial court nor this court is free to expand that duty.

The trial court did find in *Shaw* that pursuant to section 323 of the Restatement (Second) of Torts, appellant had gratuitously assumed an undertaking, *i.e.,* assisting in the scheduling of the surgical procedure, and had negligently failed to properly perform that undertaking. Section 323 of the Restatement (Second) provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if:

"(a) his failure to exercise such care increases the risk of such harm, or

"(b) the harm is suffered because of the other's reliance upon the undertaking." Section 323 of the Restatement (Second) of Torts.

While section 323 has been applied in numerous medical malpractice actions, it has never been utilized in a context similar to the instant case. See *e.g, Riddle Memorial Hospital v. Dohan,* 504 Pa. 571, 475 A.2d 1314 (1984) (failure of hospital to act reasonably in permitting doctor to remove patient from emergency room); *Gradel v. Inouye,* 491 Pa. 534, 421 A.2d 674 (1980) (failure to diagnose bone cancer); *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978) (failure to diagnose heart attack).

Section 323 does not obviate the traditional components of a prima facie case sounding in negligence, but rather substitutes a gratuitous undertaking for the element of duty. A prima facie case of medical malpractice based upon a negligent act or omission requires the plaintiff to establish: (1) the existence of a duty owed by the physician/defendant to the plaintiff/patient; (2) a breach of that duty; (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the plaintiff/patient; and (4) damages suffered by the plaintiff/patient that were a direct result of the harm." See *Mitzelfelt v. Kamrin,* 526 Pa. 54, 62, 584 A.2d 888, 891 (1990); accord: *Morean v. South Hills Health System,* 501 Pa. 634, 641, 462 A.2d 680, 684 (1983).

The trial court in *Shaw* found that by undertaking the "advocacy of surgery," appellant assumed a duty on his part to advise Mrs. Shaw of "the effects of the proposed surgery upon her pre-existing medical condition as well as the complications associated with the surgery." The Superior Court found this conclusion unsupportable under both the law of this Commonwealth and the facts of the case. The trial court concluded that, when appellant recommended that the surgery be performed at the Texas Heart Institute of Drs. DeBakey and Cooley, appellant gratuitously accepted a duty to advise her in conformity with principles of informed consent. Appellant, who had communicated to appellees his belief that Mrs. Shaw would die in the near future without the recommended surgery, undertook to assist in travel and financial arrangements but did not expressly or by implication un-

dertake to obtain her informed consent. While one could engage in an academic discussion of the factual scenarios under which the gratuitous acts of assisting in the travel and financial arrangements could result in exposure to liability if those acts were negligently undertaken and harm thereby occurred, appellant did not undertake to obtain the informed consent of Mrs. Shaw to surgery which he did not and could not perform. While appellant strongly urged that Mrs. Shaw undergo surgery, there is no duty in Pennsylvania, and the court declined the invitation to create one in the case, to impose upon an attending or referring physician the obligation to provide all of the information necessary for the patient to provide an informed consent to the surgeon.

As heretofore noted, a recovery on a cause of action based on lack of informed consent is predicated upon a technical battery. However, in the case at bar, unlike the factual situation in *Shaw*, this court finds that defendants "gratuitously" assumed an necessary undertaking and thus defendants assumed a duty on their part to advise Mr. Flanagan of "the effects of the proposed injection upon his pre-existing medical condition as well as the complications with said injection. Furthermore, unlike the facts in *Shaw, supra,* the physicians who obtained the informed consent and assumed the "gratuitous duty" were also the same physicians who performed the injections. Thus, pursuant to section 323 of the Restatement (Second) of Torts, this court finds that the physicians in this matter are subject to an assumed duty to "properly" obtain the informed consent of a patient, even when such

a procedure, if voluntarily undertaken, was not necessary for a nonsurgical procedure.

Therefore, this court enters the following:

## ORDER

Now, August 3, 1999, defendants' motion for partial summary judgment is hereby granted as to any counts that sound in battery tort in regards to the informed consent doctrine. It is the further order of this court that defendants' motion for partial summary judgment is hereby denied as to any allegation of defendants' assuming a duty under the theory of negligence.