J-A25026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY G. ALEXANDER | |
| Appellant | No. 187 EDA 2015 |

Appeal from the Judgment of Sentence January 31, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005442-2013

BEFORE:  DONOHUE, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED SEPTEMBER 23, 2015**

Appellant, Anthony G. Alexander, appeals *nunc pro tunc* from the January 31, 2014 judgment of sentence of life imprisonment without the possibility of parole, imposed following a bench trial wherein he was convicted of murder in the first degree, violation of a protective order, possession of an instrument of a crime, recklessly endangering another person, and simple assault.[1]  After careful review, we affirm.

The trial court summarized the factual history of this case as follows.

> At trial, the Commonwealth presented the testimony of Philadelphia Police Detective Nathan Williams, Philadelphia Police Officers Raymond

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 4955, 907, 2705, and 2701(a), respectively.

Andrejczak, Lamont Robinson, Jacqueline Davis, Johnny Hightower, and Floyd Jackson, Associate Medical Examiner Dr. Aaron Rosen, Jerome P. Wilkins, Colleen Fitzpatrick, and Andrea Johnson. [Appellant] testified on his own behalf and presented the testimony of Marlon Alexander and Sharon Rafael. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

On February 26, 2013, at approximately 8[:00] in the morning, [Appellant] drove to the 600 block of Yewdall Street in Philadelphia, Pennsylvania. [Appellant] exited his vehicle carrying a shotgun and approached Jennifer Fitzpatrick, who was the mother of his 4[-]year[-]old son. Fitzpatrick had previously obtained a protection from abuse order against [Appellant]. When Fitzpatrick saw [Appellant] approach her carrying a shotgun, she immediately fled down Yewdall Street screaming, "Help, help!" Fitzpatrick ran up to a car that was parked on the side of the street and begged for help. When the person inside the car saw [Appellant] approaching with a shotgun, he immediately drove off. [Appellant] caught up to Fitzpatrick and the two began to struggle. Fitzpatrick eventually broke free from [Appellant] and continued to run down Yewdall Street. [Appellant] chased Fitzpatrick down the street and fired the shotgun twice in her direction. [Appellant] eventually caught up to Fitzpatrick again and grabbed her by the arm.

[Appellant] pulled Fitzpatrick by her arm to her house on the 500 block of Yewdall Street with his shotgun still in hand. When Fitzpatrick and [Appellant] arrived at her house, Fitzpatrick walked up onto her front porch. Fitzpatrick's mother, Colleen Fitzpatrick, was inside the house and heard a loud noise from the outside, prompting her to ask her husband, Delmar Adams to investigate. When Adams looked outside a window, he saw [Appellant] pointing a shotgun at Fitzpatrick. Adams and Colleen immediately ran downstairs to the front door, followed by Fitzpatrick's daughter, Ciara

- 2 -

Dobbs. When Adams opened the front door, [Appellant] immediately turned the shotgun on him. After Adams retreated back into the house and shut the door, [Appellant] reloaded the shotgun. [Appellant] then ordered Fitzpatrick to get into her van, which was parked on the street. Fitzpatrick walked down to her van and opened the door. [Appellant] was face to face with Fitzpatrick by her van, pointing the shotgun at her chest, when Fitzpatrick's mother yelled "Jenny!" from the house. When Fitzpatrick attempted to turn around to look at her mother, [Appellant] shot her in the chest. Immediately after shooting Fitzpatrick, [Appellant] got into his car and drove away. Fitzpatrick died instantaneously as a result of the shotgun blast.

Philadelphia police officers in marked police vehicles chased [Appellant] as he fled the scene. [Appellant] was ultimately apprehended in an auto mechanic shop. Upon his arrest, [Appellant] stated "What would you do, she was on welfare, I paid for my child, I just was tired of her," and "Why didn't you just shoot me, my life is over."

Trial Court Opinion, 2/24/15, at 1-3 (citations and footnote omitted).

Appellant waived his right to a jury trial, and on January 21, 2014 proceeded to a bench trial. On January 31, 2014, at the conclusion of the three-day trial, the trial court found Appellant guilty of the aforementioned offenses. On the same day, the trial court imposed a sentence of life without parole on the first-degree murder charge, and no further penalty for the remaining counts. Appellant did not file a post-sentence motion, nor a direct appeal.

On June 16, 2014, Appellant filed a timely petition pursuant to the Post Conviction Relief Act (PCRA).[2]   Therein, Appellant averred he had requested trial counsel file a notice of appeal, and that trial counsel had failed to do so.   Appellant's PCRA petition, 6/16/14, at ¶¶ 2-3.   On December 19, 2014, the PCRA granted Appellant's petition and reinstated his direct appeal rights.   On December 31, 2014, Appellant filed a timely notice of appeal *nunc pro tunc*.[3]

On appeal, Appellant raises the following issue for our review.

> A.  Whether the verdict is insufficient as a matter of law to support a finding of guilt on the first degree murder charge where the evidence indicated that the shooting was an accidental killing without criminal intent or in the alternative the shooting was reckless but was without malice in order to form the intent for first degree murder?

Appellant's Brief at 5.

We begin by noting our well-settled standard of review.  "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt."  ***Commonwealth v. Patterson***, 91 A.3d 55, 66 (Pa. 2014) (citation omitted), *cert. denied*, ***Patterson v.***

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

[3]  Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

*Pennsylvania*, 135 S. Ct. 1400 (2015). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" *Id.* (internal quotation marks and citation omitted). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Orie*, 88 A.3d 983, 1014 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied, Diamond v. Pennsylvania*, 135 S. Ct. 145 (2014).

Instantly, Appellant was convicted of murder of the first degree, which is codified as follows.

> **§ 2502. Murder**
>
> **(a) Murder of the first degree.--**A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

- 5 -

…

> **(d) Definitions.--**As used in this section the following words and phrases shall have the meanings given to them in this subsection:
>
> …
>
> **"Intentional killing."** Killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing.

18 Pa.C.S.A. § 2502.

Furthermore, our Supreme Court has consistently stated when proving the sufficiency of the evidence for first-degree murder, the Commonwealth's burden is as follows.

> In order to sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. Specific intent and malice may be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body.

***Commonwealth v. Arrington***, 86 A.3d 831, 840 (Pa. 2014) (internal citation omitted), *cert. denied*, ***Arrington v. Pennsylvania***, 135 S. Ct. 479 (2014).

Instantly, Appellant argues the evidence was insufficient "where there was no evidence that he had a specific premeditated intent to kill and the evidence supports that the firearm accidently discharged and killed the decedent." Appellant's Brief at 9. Appellant relies on his own testimony at

trial that the "shot gun discharged accidentally while he was having a discussion with [Fitzpatrick] in or near her van." *Id.* at 10.  He further argues that Detective Williams' testimony that Appellant was "upset and crying when he learned Ms. Fitzpatrick had died[,]" bolsters his assertion. *Id.*  Upon careful review, we disagree.

The trial court has fully and adequately set forth the evidence in support of its conclusion that the Commonwealth presented sufficient evidence of Appellant's intent to kill in its Rule 1925(a) opinion.  *See* Trial Court Opinion, 2/24/15, at 3-7. Specifically, we note that several eye-witnesses testified that Appellant repeatedly pointed the shotgun at Fitzpatrick, fired twice, reloaded and then shot her in the heart from only feet away.  Pennsylvania courts have consistently held that such evidence is sufficient to establish the specific intent to kill for a first-degree murder conviction.  *See Commonwealth v. Mattison*, 82 A.3d 386, 392 (Pa. 2013) (concluding sufficient evidence of specific intent to kill existed where, "eye witness testimony demonstrate[d] that after [the defendant] … fatally shot the victim in the head at close range while the victim was lying defenseless on the ground[]"), *cert. denied*, *Mattison v. Pennsylvania*, 135 S. Ct. 221 (2014); *Commonwealth v. Chine*, 40 A.3d 1239, 1242 (Pa. Super. 2012) (concluding the defendant "surely intended the shooting to have fatal results as he fired three shots at the victim's head, a vital part of the body[]"), *appeal denied*, 63 A.3d 773 (Pa. 2013).    Accordingly, for

purposes of our review, we adopt the reasoning of the Honorable Glenn B. Bronson as our own.

Based on the foregoing, we conclude the Commonwealth presented sufficient evidence to enable the trial court to find Appellant had the specific intent to kill. Accordingly, we adopt the trial court's February 24, 2015 opinion as our own, and Appellant's January 31, 2014 judgment of sentence is affirmed.[4]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/23/2015

---

[4] The parties are directed to attach a copy of the trial court's February 24, 2015 opinion to this memorandum in the event of further proceedings.

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF        :       CP-51-CR-0005442-2013
PENNSYLVANIA              :

     v.               



CP-51-CR-0005442-2013 Comm. v. Alexander, Anthony
Opinion

ANTHONY ALEXANDER

7261556851

OPINION

BRONSON, J.                                   February 24, 2015

On January 31, 2014, following a non-jury trial before this Court, defendant Anthony Alexander was convicted of one count each of first degree murder (18 Pa.C.S. § 2502), violation of a protective order (18 Pa.C.S. § 4955), possession of an instrument of crime (18 Pa.C.S. § 907), recklessly endangering another person (18 Pa.C.S. § 2705), and simple assault (18 Pa.C.S.§ 2701(a)). The Court immediately imposed the mandatory sentence of life in prison for the murder charge (18 Pa.C.S. § 1102(a)(1).

Defendant has now appealed from the judgment of sentence entered by the Court on the sole ground that the evidence was legally insufficient to support a finding of guilt for first degree murder. Statement of Errors Complained of on Appeal ("Statement of Errors") at ¶ 1. For the reasons set forth below, defendant's claim is without merit and the judgment of sentence should be affirmed.

## I. FACTUAL BACKGROUND

At trial, the Commonwealth presented the testimony of Philadelphia Police Detective Nathan Williams, Philadelphia Police Officers Raymond Andrejczak, Lamont Robinson,

Jacqueline Davis, Johnny Hightower, and Floyd Jackson, Associate Medical Examiner Dr. Aaron Rosen, Jerome P. Wilkins, Colleen Fitzpatrick, and Andrea Johnson. Defendant testified on his own behalf and presented the testimony of Marlon Alexander and Sharon Rafael. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

On February 26, 2013, at approximately 8 o'clock in the morning, defendant drove to the 600 block of Yewdall Street in Philadelphia, Pennsylvania. N.T. 1/21/14 at 61-62; 1/23/14 at 157-158. Defendant exited his vehicle carrying a shotgun and approached Jennifer Fitzpatrick, who was the mother of his 4 year old son. *Id.;* N.T. 1/23/14 at 145. Fitzpatrick had previously obtained a protection from abuse order against defendant. N.T. 1/23/14 at 18, 68-69, 152. When Fitzpatrick saw defendant approach her carrying a shotgun, she immediately fled down Yewdall Street screaming, "Help, help!" N.T. 1/21/14 at 61; 1/23/14 at 159. Fitzpatrick ran up to a car that was parked on the side of the street and begged for help. N.T. 1/21/14 at 63. When the person inside the car saw defendant approaching with a shotgun, he immediately drove off. *Id.* Defendant caught up to Fitzpatrick and the two began to struggle. N.T. 1/21/14 at 63. Fitzpatrick eventually broke free from defendant and continued to run down Yewdall Street. N.T. 1/21/14 at 63-64. Defendant chased Fitzpatrick down the street and fired the shotgun twice in her direction. N.T. 1/21/14 at 63, 65-67. Defendant eventually caught up to Fitzpatrick again and grabbed her by the arm. N.T. 1/21/14 at 68-69.

Defendant pulled Fitzpatrick by her arm to her house on the 500 block of Yewdall Street with the shotgun still in hand. N.T. 1/21/14 at 68-69. When Fitzpatrick and defendant arrived at her house, Fitzpatrick walked up onto her front porch. N.T. at 1/21/14 at 70. Fitzpatrick's mother, Colleen Fitzpatrick, was inside the house and heard a loud noise from the outside,

2

prompting her to ask her husband, Delmar Adams, to investigate. N.T. 1/23/14 at 20-21.[1] When Adams looked outside a window, he saw defendant pointing a shotgun at Fitzpatrick. N.T. 1/23/14 at 21. Adams and Colleen immediately ran downstairs to the front door, followed by Fitzpatrick's daughter, Ciara Dobbs. N.T. at 1/23/14 at 21, 24. When Adams opened the front door, defendant immediately turned the shotgun on him. N.T. 1/21/14 at 70-71; 1/23/14 at 22, 24. After Adams retreated back into the house and shut the door, defendant reloaded the shotgun. N.T. 1/21/14 at 71. Defendant then ordered Fitzpatrick to get into her van, which was parked on the street. N.T. 1/21/14 at 71-72; 1/23/14 at 24. Fitzpatrick walked down to her van and opened the door. N.T. 1/21/14 at 72-73. Defendant was face to face with Fitzpatrick by her van, pointing the shotgun at her chest, when Fitzpatrick's mother yelled "Jenny!" from the house. N.T. 1/21/14 at 73-74; 1/23/14 at 24, 29-31. When Fitzpatrick attempted to turn around to look at her mother, defendant shot her in the chest. N.T. 1/21/14 at 74-75; 1/23/14 at 24, 30-31. Immediately after shooting Fitzpatrick, defendant got in his car and drove away. N.T. 1/21/14 at 73, 75. Fitzpatrick died instantaneously as a result of the shotgun blast. N.T. 1/23/14 at 56-57.

Philadelphia police officers in marked police vehicles chased defendant as he fled the scene. N.T. 1/23/14 at 107-109, 114. Defendant was ultimately apprehended in an auto mechanic shop. N.T. 1/23/14 at 114. Upon his arrest, defendant stated "What would you do, she was on welfare, I paid for my child, I just was tired of her," and "Why didn't you just shoot me, my life is over." N.T. 1/23/14 at 114-115.

## II. DISCUSSION

Defendant's only claim pertains to the sufficiency of the evidence supporting his conviction for first degree murder. Defendant avers that the evidence was "insufficient as a

---

[1] As both Jennifer Fitzpatrick and Colleen Fitzpatrick share their last name, Colleen Fitzpatrick will hereafter be referred to by her first name to avoid confusion.

3

matter of law to support a finding of guilt on the first degree murder charge where the evidence indicted that the shooting was an accidental killing without criminal intent or in the alternative the shooting was reckless but was without malice in order to form the intent for first degree murder." Statement of Errors at ¶ 1. This claim is without merit.

In considering a challenge to the sufficiency of the evidence, the Court must decide whether the evidence at trial, viewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, could enable the fact-finder to find every element of the crimes charged beyond a reasonable doubt. *Commonwealth v. Walsh*, 36 A.3d 613, 618 (Pa. Super. 2012) (quoting *Commonwealth v. Brumbaugh*, 932 A.2d 108, 109 (Pa. Super. 2007)). In making this assessment, a reviewing court may not weigh the evidence and substitute its own judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence. *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011). "[A] mere conflict in the testimony of the witnesses does not render the evidence insufficient..." *Commonwealth v. Montini*, 712 A.2d 761, 767 (Pa. Super. 1998). The Commonwealth may satisfy its burden of proof entirely by circumstantial evidence. *Ramtahal*, 33 A.3d at 607. "If the record contains support for the verdict, it may not be disturbed." *Commonwealth v. Adams*, 882 A.2d 496, 499 (Pa. Super. 2005) (quoting *Commonwealth v. Burns*, 765 A.2d 1144 (Pa. Super. 2000), *appeal denied*, 782 A.2d 542 (Pa. 2001)).

The evidence is sufficient to establish first-degree murder where the Commonwealth proves that (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with the specific intent to kill." *Commonwealth v. Edwards*, 903 A.2d 1139, 1146 (Pa. 2006) (quoting 18 Pa.C.S. § 2502(d)). The specific intent to kill can be inferred "from the manner in which the homicide was committed, such as, multiple gunshot

4

wounds." *Commonwealth v. Hughes*, 865 A.2d 761, 793 (Pa. 2004). Moreover, specific intent to kill may be inferred from a defendant's use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. Robertson*, 874 A.2d 1200, 1207 (Pa. Super. 2005).

The evidence in this case clearly established that defendant intended to shoot and kill Fitzpatrick. Jerome Wilkins, an eyewitness to the shooting, testified he saw Fitzpatrick running down the 600 block of Yewdall Street screaming for help. N.T. 1/21/14 at 61-62. Wilkins testified that he saw defendant running behind Fitzpatrick, with a shotgun pointing towards her, and watched as defendant fired the shotgun twice in her direction as she fled. N.T. 1/21/14 at 65-67. Wilkins further observed defendant holding the shotgun in one hand while pulling Fitzpatrick towards her house with the other hand. N.T. 1/21/14 at 69-70. When defendant and Fitzpatrick reached her house, Wilkins testified he observed Adams open the front door of the house and witnessed defendant point the shotgun at Adams, forcing Adams to retreat back into the home. N.T. 1/21/14 at 70-71. After Adams retreated into the house, Wilkins observed defendant reload the shotgun. N.T. 1/21/14 at 71. Wilkins then saw defendant direct Fitzpatrick to a van parked on the street. N.T. 1/21/14 at 71-72. As defendant and Fitzpatrick were standing by the van, Wilkins observed defendant pointing the shotgun at Fitzpatrick from about three to four feet away. N.T. 1/21/14 at 73. Moments later, Wilkins observed defendant fire the shotgun at Fitzpatrick. N.T 1/21/14 at 73-75. Wilkins testified that after defendant shot Fitzpatrick, he threw the shotgun into his car and "spun off." N.T. 1/21/14 at 73, 75.

Fitzpatrick's mother, Colleen, corroborated Wilkin's testimony. Colleen testified that on the morning of February 26th, 2013, she heard a loud noise outside and asked her husband, Delmar Adams, to investigate. N.T. 1/23/2014 at 20-21. Colleen testified that Adams went to the window and looked outside before saying, "Tony outside, he got a gun, he got Jennifer." *Id.*

5

Colleen stated that she, Adams, and Fitzpatrick's daughter, Ciara Dobbs, ran downstairs to the door and opened it. N.T. 1/23/14 at 21, 24. When they opened the door, Colleen testified that she saw defendant outside pointing a gun at Fitzpatrick. N.T. 1/23/14 at 21-24. Colleen testified that when defendant saw Adams open the door, he turned the shotgun on them. N.T. 1/23/14 at 22. Colleen then testified that Adams immediately shut the door. N.T. 1/23/14 at 24. After a brief moment, Colleen stated that she opened the door again and observed defendant pointing the shotgun at Fitzpatrick's chest. N.T. 1/23/14 at 24, 28-29. Colleen testified that she then called out, "Jenny," and Fitzpatrick turned to try and look at her. N.T. 1/23/14 at 31. Colleen then stated that when Fitzpatrick turned to look at her, defendant shot her in the chest while standing only three or four feet away. N.T. 1/23/14 at 29-31.

The Commonwealth also presented evidence of defendant's flight following the shooting that was compelling evidence of his consciousness of guilt. Philadelphia Police Officer Johnny Hightower testified that he pursued defendant, who was driving a black Mercedes-Benz. N.T. 1/23/14 at 106. Hightower testified that defendant refused to pull over when Hightower activated his lights and sirens. N.T. 1/23/14 at 107. Hightower stated that when defendant came to a stop sign, Hightower got out of his police vehicle, drew his weapon, and ordered defendant to step out of his car. *Id.* Defendant ignored Hightower's instructions and continued to flee the scene. *Id.* Hightower continued pursuing defendant through at least ten stop signs and stop lights, with defendant repeatedly refusing to comply with Hightower's commands to stop and step out of his car. N.T. 1/23/14 at 107-109. Officer Floyd Jackson testified that he continued the pursuit of defendant as he fled the scene, ultimately apprehending defendant at a mechanic's shop. N.T. 1/23/14 at 114. Jackson also testified that defendant disregarded multiple stop signs and red lights as he fled. *Id.*

6

Defendant's statements upon being arrested were highly probative of his specific intent to kill. Officer Jackson testified that when he apprehended the defendant, defendant stated, "What would you do, she was on welfare, I paid for my child, I just was tired of her," and "Why didn't you just shoot me, my life is over." N.T. 1/23/14 at 114-115. These statements were completely inconsistent with an accidental or reckless shooting.

The eye-witness testimony by Wilkins and Coleen was corroborated by the physical evidence recovered at the scene. Officer Jacqueline Davis testified that she collected a fired 12-gauge shotgun shell next to Fitzpatrick's body. N.T. 1/23/14 at 81. Officer Davis also recovered a live 12-gauge shotgun shell in the intersection of Cedar and Yewdall Street. N.T. 1/23/14 at 81-82. Further, Officer Davis testified that she found three pieces of plastic wadding from shotgun shell casings and a fired shotgun shell on the block of 600 Yewdall Street. N.T. 1/23/14 at 82.

Associate Medical Examiner Dr. Aaron Rosen testified that the shotgun blast "basically destroyed [Fitzpatrick's] heart such that it was almost unrecognizable...." N.T. 1/23/14 at 57. Dr. Rosen testified that Fitzpatrick's wound was consistent with a shotgun blast that was fired from within a three foot range. N.T. 1/23/14 at 58-59.

Accordingly, the evidence demonstrated that defendant chased Fitzpatrick down the street while firing his shotgun twice in Fitzpatrick's direction. He reloaded the shotgun and fired it into Fitzpatrick's chest at pointblank range, and then immediately attempted to flee the scene. When caught, he explained that he was "tired of her." This was overwhelming evidence that defendant acted with malice and with the specific intent to kill. Accordingly, the evidence was clearly sufficient to support the Court's finding that defendant was guilty of first degree murder.

## III. CONCLUSION

For all of the foregoing reasons, the Court's judgment of sentence should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.