J-S23022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| STANLEY POSTELL | |
| Appellant | No. 512 EDA 2015 |

Appeal from the Judgment of Sentence September 26, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008438-2013

BEFORE:  PANELLA, J., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                              **FILED JULY 13, 2016**

Stanley Postell appeals from the judgment of sentence entered on September 26, 2014, in the Court of Common Pleas of Philadelphia County, following his conviction by jury of first-degree murder[1] and related offenses, in the fatal shooting of Bernard Scott.  The mandatory sentence of life imprisonment was imposed immediately following the jury verdict.  In this timely appeal, Postell raises four issues.  The first is a claim there was insufficient evidence to prove Postell committed an "intentional killing." Issues 2, 3 and 4 are all aspects of Postell's claim that the Commonwealth failed to disprove his claim of self-defense.  We will address these claims as

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

one. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

We begin by relating the factual background as determined and related by the trial court in its April 27, 2015, Pa.R.A.P. 1925(a) opinion.

In the days leading up to April 11, 2013, a group of high school students associated with the Lansdowne section of Philadelphia, and a group of high school students associated with the Wynnefield section of Philadelphia, had an escalating series of conflicts. On April 11, 2013, Basil Harrison from Wynnefield was going to fight Anthony White, known as "Tone," from Lansdowne as the next step in this conflict. On April 11, 2013, prior to the fight, Harrison met with his friends from Wynnefield, Tyler Blango and Rahim Pleasant. Harrison informed Blango and Pleasant that there was going to be a fight at the Tustin Playground, across from the Overbrook High School, and that he thought some of the people who would be present would have guns. Blango was armed with a silver Colt .38 revolver with duct tape on the handle and rubber bands replacing the missing spring that put tension on the weapon's hammer.

At approximately 3:30 in the afternoon, a group from Wynnefield, which included Harrison, Blango, and Pleasant, congregated at the Tustin Playground, in the outfield of the baseball diamond, where a group from Lansdowne was already present. [Postell] and Jaquan Jordan [co-defendant] were present with the students from Lansdowne. [Postell] was wearing a red hoody sweatshirt with light pants and possessed a .45 caliber semi-automatic handgun. By the time he arrived at the playground, Blango had been told that [Postell] was going to have a gun. Approximately 30 students were present on the playground, forming a circle around the fight location. Although Harrison and Tone were supposed to fight, Tone backed out of the fight for an unknown reason. Instead, Daquan Briscoe stepped in for Harrison while Jordan stepped in for Tone.

- 2 -

While Briscoe and Jordan were fighting, [Postell], Blango and Samir[2] (a friend of Blango) got into a verbal argument. During this argument, [Postell] stated, "You got your gun? Because I got my gun too." [Postell] then drew his gun and shot at Blango and the crowd. Thereafter, Blango pulled his gun and attempted to return fire, but Blango's gun did not work. Jordan was also in possession of a firearm and shot it during the exchange, though it is unclear at whom he was shooting. Upon the shots being fired, the spectators watching the fight began to flee from the area. Blango was shot once in the hip and retreated away from the playground to the Little Caesar's Pizza store across the street. Blango was later taken to the hospital by police, where surgeons removed a portion of Blango's small intestine and colon.

While [Postell] was shooting at Blango, a fight spectator, Bernard Scott, was hit. Antoine Gardiner, an eyewitness from the street who was in his truck, stopped his vehicle and, with the assistance of a few students from the playground, placed Scott into his truck and transported him to Lankenau Hospital. Scott was hit three times, once in the right wrist, once through the right abdomen, and once in the left wrist.

After shooting Blango and into the crowd, [Postell] fled towards 60th Street. Pleasant, who had been watching the fight, obtained a gun from Samir and chased after [Postell]. Approaching [Postell], Pleasant shot at [Postell] approximately four or five times, striking him once in the back.

Mark Robinson, an eyewitness to the shooting and [Postell's] flight, directed police officers to the direction [Postell] had fled. Police found [Postell] shortly thereafter as he walked near the corner of 61st Street and Jefferson Street. Robinson and Donald Jones, another eyewitness to [Postell's] flight, were transported to [Postell's] location, where they positively identified [Postell]. Police then placed [Postell] under arrest and were about to transport him to police headquarters when [Postell] stated, "I'm shot, I'm shot in the back." The arresting officers verified that

_____

[2] Samir's full name is not revealed in the certified record.

[Postell] had been shot and transported him to the University of Pennsylvania Hospital.

[Postell] was interviewed at hospital, where he denied being present at the fight. [Postell] also denied having a gun that day. [Postell] further stated that he must have been shot while Pleasant or Blango were shooting at an unidentified male in a plaid shirt. After [Postell's] release from the hospital the next day, he provided another statement to police. In his second interview, [Postell] stated he was present in the playground and that, while the fight was ongoing, "Rahim['s] brother" took a gun from a "little short boy on [a] bike," pointed it at everybody, and started shooting. [Postell] further stated that he was shot in the back and that he then drew his gun and indiscriminately fired back as he was running away. [Postell] admitted to possessing a "big" gun, either a .40 or .45 caliber pistol.

Police recovered five .45 caliber fired cartridge casings at the scene of the shooting. Another four .380 caliber fired casings were recovered at the alley where Harrison shot at [Postell].

Trial Court Opinion, 4/27/2015, at 2-5 (citations to notes of testimony omitted). As a result of the gunfire, Blango was wounded and Scott was killed.

In light of the above facts, we now look to Postell's claims of insufficient evidence. Initially, we note:

The standard of review for claims of insufficient evidence is well-settled. With respect to such claims, we consider the evidence in the light most favorable to the Commonwealth as verdict winner. *Commonwealth v. Barnes*, 871 A.2d 812, 819 (Pa. Super. 2005). In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the elements of the offense beyond a reasonable doubt. *Id.* We keep in mind that it was for the trier of fact to determine the weight of the evidence and the credibility of witnesses. *Id.* The jury was free to believe all, part or none of the evidence. *Id.* This Court may not weigh the evidence or substitute its judgment or that of the factfinder. *Id.*

*Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa. Super. 2006).

Additionally, "a mere conflict" in the testimony of the witnesses does not render the evidence insufficient because "it is within the province of the factfinder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence." ***Commonwealth v. Montini***, 712 A.2d 761, 767-78 (Pa. Super. 1998). "The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Commonwealth v. Bragg***, 133 A.3d 328, 330-31 (Pa. Super. 2016) (citation omitted). Finally, "If the record contains support for the verdict, it may not be disturbed." ***Commonwealth v. Adams***, 882 A.2d 496, 499 (Pa. Super. 2005) (citation omitted).

In his first claim, Postell argues there was insufficient evidence to prove beyond a reasonable doubt he engaged in an "intentional killing." The doctrine of "transferred intent"[3] renders Postell legally culpable for the homicide of Scott, an unintended victim, if Postell had the specific intent to kill Blango when he fired at Blango. Postell argues he was justified in firing at Blango and therefore had no criminal intent. Therefore, he concludes, he neither attempted to murder Blango nor murdered Scott.

---

[3] The doctrine of transferred intent provides the intent to murder may be transferred where the person actually killed is not the intended victim. ***See Commonwealth v. Padilla***, 80 A.3d 1238, 1247 (Pa. 2013); 18 Pa.C.S. § 303(b)(1). Accordingly, if Postell intended to kill Blango but actually killed Scott, the intent is legally transferred to include Scott.

Although Postell argues this claim in terms of self-defense, we will initially review the trial court's determination that, as a matter of law, there was sufficient evidence to support the jury's determination that Postell possessed the specific intent to kill Blango and that Postell took a substantial step to accomplish that goal. *See Commonwealth v. Blakeney*, 946 A.2d 645 (Pa. 2008) (attempted murder requires proof beyond a reasonable doubt defendant possessed specific intent to kill and took a substantial step toward that goal). The trial court noted, and the certified record supports, the facts that Postell and Blango and Samir engaged in an argument prior to the shooting. While arguing with Samir, Postell was clutching his gun. During the argument, Postell stated to Blango, "You got your gun? Because I got my gun too." N.T. 9/9/2014 at 92. Both men pulled their guns and Postell fired at Blango, hitting him in the hip/abdomen. The wound required surgery to repair, with the doctors removing portions of Blango's small intestine and colon. The trial court reasoned:

> The above evidence establishes that [Postell], after arguing with Blango, pulled a large caliber handgun and fired it multiple times in Blango's direction, striking him once in the hip. From that evidence, a reasonable juror could conclude that [Postell] acted with the specific intent to kill Blango. *See* [*Commonwealth v.*] *Manley*, 985 A.2d [256,] 272 [(Pa. Super. 2009) (firing a bullet in the general area in which vital organs are located, can, in and of itself, be sufficient to prove specific intent to kill)]. By firing those bullets, [Postell] took a substantial step towards killing Blango. Accordingly, the evidence was sufficient for the jury to find that [Postell] attempted to kill Tyler Blango.

Trial Court Opinion, 4/27/2015, at 9.

Accordingly, our review confirms that the certified record supports the determination that Postell engaged in an intentional killing and that the doctrine of transferred intent was applicable.

Postell's final three issues all involve his claim that he is not legally culpable for homicide because he fired his gun at Blango in self-defense. Specifically, Postell argues: (1) the elements of justifiable self-defense were raised and satisfied, (2) the Commonwealth did not prove beyond a reasonable doubt that Postell's acts were not justifiable self-defense, and (3) if the killing of Scott was justified, Postell cannot be guilty of attempted murder and aggravated assault of Blango. We note that the first "issue" is simply a statement that Postell believes the evidence supported his claim of self-defense; there is no actual claim of error within the brief under this heading, and, in fact, the trial court gave a charge on self-defense. Additionally, the third issue is basically a restatement of Postell's initial claim that he did not engage in an intentional killing. The only salient point in the remaining three claims is Postell's assertion that the Commonwealth did not disprove his claim of self-defense.

Self-defense, using deadly force, is defined by statute:

The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S. § 505(b)(2)(i)-(ii).

Case law has interpreted this statute as follows:

According to our Supreme Court, the justified use of deadly force requires:

a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; b) the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom; and c) the actor did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Harris*, 542 Pa. 134, 137, 665 A.2d 1172, 1174 (1995). The defendant has no "burden to prove" his self-defense claim. *Commonwealth v. Torres*, 564 Pa. 219, 224, 766 A.2d 342, 345 (2001). The Supreme Court explained the evidentiary burdens as follows:

While there is no burden on a defendant to prove the [self-defense] claim, before that defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

*Id*. (internal citations omitted). *See also Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa. Super. 2008) (stating same standard). If the defendant properly raises "self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense." *Commonwealth v. McClendon*, 874 A.2d 1223, 1229-30 (Pa. Super. 2005).

> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.
>
> ***Commonwealth v. Hammond***, 953 A.2d 544, 559 (Pa. Super. 2008), *appeal denied,* 600 Pa. 743, 964 A.2d 894 (2009) (quoting *McClendon,* supra at 1230). The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence. ***Commonwealth v. Burns***, 765 A.2d 1144, 1149 (Pa. Super. 2000), *appeal denied,* 566 Pa. 657, 782 A.2d 542 (2001).

***Commonwealth v. Smith***, 97 A.3d 782, 787 (Pa. Super. 2014).

> Additionally relevant to this matter,
>
> As the ***Mouzon***[4] Court observed, the use of deadly force itself "cannot be viewed in isolation with [the victim] as the sole physical aggressor and [the defendant] acting in responsive self-defense. [T]his would be an incomplete and inaccurate view of the circumstances for self-defense purposes." ***Id***. at 549, 53 A.3d at 751. To claim self-defense, the defendant must be free from fault in provoking **or escalating** the altercation that led to the offense, before the defendant can be excused from using deadly force. ***Id***. (emphasis added).

***Smith***, ***supra***, at 787-88.

Our review of the certified record indicates that it was Postell who introduced firearms to the already volatile situation when he first clutched his gun while arguing with Samir and Blango, and then further escalated the situation by lifting his shirt and asking Blango, "You got your gun? Because I got my gun too." N.T. 9/9/2014 at 92. For this reason alone, Postell's

_____

4 ***Commonwealth v. Mouzon***, 53 A.3d 738 (Pa. 2012).

claim of self-defense fails. *See*, *Commonwealth v. Alvin*, 516 A.2d 376 (Pa. Super. 1986) (actor must be free from fault in provoking or continuing difficulty which resulted in injuries).

Nevertheless, we also agree with the trial court's analysis, stating:

[T]he Commonwealth offered compelling evidence to refute [Postell's] self-defense claim. Blango testified that he watched as [Postell] "clutched on his gun" before Blango and [Postell] both drew their guns. Likewise, Pleasant testified that both Blango and [Postell] reached for their guns and that [Postell] started shooting. Pleasant clarified that Blango did not have his firearm fully drawn by the time [Postell] started shooting. Harrison testified that [Postell] told Blango before drawing his gun and shooting at Blango, "You got your gun? Because I got my gun too." Eyewitness Mark Robinson also testified that [Postell] pulled a gun from his waist and started shooting, though Robinson did not see anyone else attempt to shoot at that time. Robinson further testified that [Postell] did not begin to flee the scene until after he had shot several times. Eyewitness Antoine Gardiner also testified that [Postell] was standing still at the time he was shooting. Finally, when detained by police officers, [Postell] initially denied any involvement in the shooting at the playground and denied that he was in possession of or fired a gun, instead alleging that he had been accidentally shot while Pleasant and Blango attempted to shoot some unidentified third individual. [Postell] did not acknowledge that he was even present on the playground until the next day, when he told the police that he only drew his firearm after having been shot himself as he was fleeing the scene. However, [Postell's] second statement was soundly refuted by all other eyewitness accounts and the physical evidence, which detailed that [Postell] fired the first shots, that Blango's gun never fired, and that [Postell] was shot by Pleasant only after he had fled the scene and was chased down by Pleasant outside of the playground.

This compelling evidence established that [Postell] provoked the encounter by making threatening statements about possessing a gun and clutching at his waistband, and then started the gunfight by shooting at Blango on the Tustin Playground.

- 10 -

Accordingly, there was ample evidence for the jury to conclude, beyond a reasonable doubt, that [Postell] did not act in justifiable self-defense. Moreover, [Postell's] culpability as the first shooter was corroborated by his behavior after the shooting, which included fleeing the scene, disposing of his gun, and lying to police about his involvement in the playground shooting.

Trial Court Opinion, 4/27/2015 at 11-13 (citations to notes of testimony omitted).

In light of the above, it is clear that contrary to his assertions, Postell did not fulfill all the elements to obtain the benefit of a claim of self-defense, the Commonwealth disproved his claim of self-defense beyond a reasonable doubt, and neither the attempted murder of Blango nor the murder of Scott was justifiable. Accordingly, Postell is not entitled to relief on any of his claims.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/13/2016