J-A27003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARL MICHAEL RICKETTS, JR. | : | |
| | : | |
| Appellant | : | No. 1570 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 14, 2022
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s): CP-44-CR-0000159-2022

BEFORE: LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.: **FILED: FEBRUARY 27, 2024**

Carl Michael Ricketts, Jr., appeals from the judgment of sentence, entered in the Court of Common Pleas of Mifflin County, after his conviction, following a non-jury trial, of one count of driving under the influence – general impairment/incapable of driving safely, first offense (DUI).[1] Upon review, we affirm and rely upon the opinion authored by the Honorable David W. Barron, President Judge.

On January 9, 2022, Ricketts drove William Steele from the Harrisburg halfway house where they both lived and worked to Robertsdale, Pennsylvania, an approximately two-hour drive. Ricketts dropped Steele off at the home of his then-girlfriend around 12:30 p.m. While Steele visited his

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(a)(1).

girlfriend, Ricketts was at Rookeez Sports Bar, less than 10 miles from Robertsdale, for at least three hours. Ricketts picked up Steele around 6:00 p.m. and began the return drive. Steele testified that the roads were dark during the drive and the weather conditions were rainy, sleety, and misty. During the drive, Steele asked Ricketts to slow down several times, as he was travelling at a high rate of speed and tailgating other vehicles.

Shortly after passing the Lewistown exit, at around 7:00 p.m., the vehicle crashed, struck the guardrail, and overturned. Steele was pinned inside the vehicle and transported by ambulance to a trauma center for treatment for several compression fractures to his neck and back.[2] Police Officer Garret Horning located Ricketts at the scene, outside of the vehicle, and interviewed him. Officer Horning testified that he could smell alcohol on Ricketts' breath, that Ricketts had bloodshot, glassy eyes, and that he had a staggered gait. Ricketts also informed Horning that he had consumed two beers around 3:00 p.m. Officer Horning administered standard field sobriety tests (FSTs), including the "Walk and Turn" and "One Leg Stand" tests. Officer Horning testified that Ricketts performed poorly in both tests.

Ricketts was subsequently arrested and transported to the Mifflin County Correctional Facility. Shortly thereafter, officers read Ricketts his implied consent warnings and asked if he would submit to a breath test. Ricketts stated he was not comfortable without an attorney present, which the

---

[2] Steele continues to receive medical treatment for nerve damage as a result of the crash.

- 2 -

officer treated as a refusal. Ricketts also refused to sign the form indicating he refused the breath test. He was then charged with the above offense. On October 14, 2022, following a non-jury trial before President Judge Barron, Ricketts was found guilty of a DUI, and the court immediately sentenced him to three to six months' incarceration, along with payments of costs and fines.

Ricketts did not file a post-sentence motion. Ricketts timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Ricketts raises the following issue for our review: "Whether the trial court erred in denying [Ricketts'] challenge to the sufficiency of the evidence?" Appellant's Brief, at 4.

Ricketts argues that the Commonwealth failed to present sufficient evidence that he was "under the influence of alcohol to such a degree that rendered him incapable of safe driving." Appellant's Brief, at 10 (citing *Commonwealth v. Montini*, 712 A.2d 761, 768 (Pa. Super. 1998)). Ricketts suggests that the accident occurred due to road conditions, driving at an excessive speed, and an unknown object in the road, rather than substantial impairment due to alcohol consumption. *Id.* at 11. Further, Ricketts argues that Officer Horning's observations as to Ricketts' possible impairment was "limited and substantially inadequate," which was evident in Officer Horning's testimony. *Id.* at 11-12 (stating there was no testimony of slurred speech, difficulty responding, swaying, stumbling, or uncooperativeness during investigative state).

In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. **Commonwealth v. Randall**, 758 A.2d 669, 674 (Pa. Super. 2000). Furthermore, "it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence." **Commonwealth v. Moore**, 648 A.2d 331, 333 (Pa. Super. 1994) (citations omitted). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct[,] so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." **Commonwealth v. Swerdlow**, 636 A.2d 1173, 1176 (Pa. Super. 1994) (citation omitted). **See also Commonwealth v. Chmiel**, 639 A.2d 9, 10-11 (Pa. 1994). Moreover, we will not "substitute our judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed." **Commonwealth v. Brewer**, 876 A.2d 1029, 1032 (Pa. Super. 2005) (quotations omitted). Finally, "[b]ecause evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Diamond**, 83 A.3d 119, 126 (Pa. 2013).

After a review of the parties' briefs, the relevant case law, and the certified record on appeal, we rely upon the well-reasoned trial court opinion to affirm Ricketts' DUI conviction. **See** Trial Court Opinion, 1/6/23, at 4-5.

Viewing the evidence in a light most favorable to the Commonwealth, as verdict winner, *see Randall*, *supra*, there was sufficient evidence to prove that, due to alcohol consumption, Ricketts' judgment was impaired to a degree that made him incapable of safely operating his motor vehicle. In particular, we emphasize the following evidence presented by the Commonwealth:

> This evidence [] includes Officer Horning's discovery [that Ricketts] lost control of his pickup [truck and] collid[ed] with a guardrail[, which] result[ed] in a rollover with severe injury to his passenger; the strong odor of alcohol on [Ricketts'] breath when Officer Horning spoke with him; [Ricketts'] admission that he had been driving at the time of the crash and that he had consumed alcohol before driving; and [Ricketts'] poor performance on [FSTs]. Moreover, [] Steele's testimony regarding [Ricketts operating the vehicle at a] consistently high rate of speed, tailgating, and aggressive behaviors toward other drivers on the road indicates impaired judgment and an inability to operate a motor vehicle at the time of the[] failed return trip to Harrisburg.

*Id.* at 5. The findings of the trial court are supported in the record, and, as such, we will not disturb Ricketts' conviction. *See Brewer*, *supra*. We, therefore, rely upon President Judge Barron's opinion and affirm the judgment of sentence. The parties are directed to attach a copy of the trial court's opinion in the event of further proceedings.

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 2/27/2024

IN THE COURT OF COMMON PLEAS OF MIFFLIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-44-CR-159-2022 |
| | : | |
| v. | : | |
| | : | |
| CARL MICHAEL RICKETTS, JR. | : | |
| | : | |

### Statement in Compliance with Pa. R.A.P. 1925

AND NOW, this 3 rd day of January, 2023, having reviewed the docket entries and Appellant's Concise Statement of Matters Complained of On Appeal Pursuant to Pa.R.A.P. 1925, and this Court addresses the sole issue claimed by Appellant below.

### I. Sufficiency of the Evidence

Appellant complains the evidence presented at trial was insufficient as a matter of law to support a finding of guilt as to the charge of DUI—General Impairment/Incapable of Safe Driving/Accident/Refusal. Viewing the evidence admitted at trial, and all the reasonable inferences derived therefrom, in the light most favorable to the Commonwealth as the verdict winner, this Court believes the evidence supported that Appellant acted with the requisite substantial mental and physical impairment to support his DUI conviction.

### FACTS

On January 9, 2022, Appellant drove Commonwealth's witness William Steele to Robertsdale, PA to see Mr. Steele's then-girlfriend. (Steele Test., 4:17-25, October 14, 2022, CR-159-2022.) Mr. Steele knew Appellant from a halfway house where they both worked and lived. (*Id.*, 5:12-19.) At the time, Appellant had just obtained his own apartment. *Id.* The two arrived in Robertsdale around 12:30. (*Id.*, 5:5-11.) Appellant dropped Mr. Steele off at his girlfriend's house. (*Id.*, 5:25-6:1.)

While Mr. Steele was visiting with his girlfriend, he received multiple calls from an unknown number. (*Id.*, 7:4-8.) When he called back at approximately 2:30 P.M., he learned the number belonged to Rookeez Sports Bar, and Appellant was contacting Mr. Steele to let him know he was at the bar, had ordered food, and was watching one of the games. (*Id.*, 7:8-25.) At around 4:00 P.M., Appellant had not yet left Rookeez, despite prior agreeing to

1

begin the return trip to the halfway house at 4:00. (*Id.*, 7:18-19, 8:2-5.) The sports bar is approximately twenty-five minutes from Mr. Steele's ex-girlfriend's house. (*Id.*, 7:15-16.) Mr. Steele called Rookies at about 4:00 P.M. and again at 5:30 P.M. (*Id.*, 8:2-11.) The bartender informed him Appellant had already left, but Appellant did not arrive until about 6 P.M. (*Id.*, 8: 8-14.)

When Appellant arrived, Mr. Steele told him he would drive back. (*Id.*, 8: 22-24.) Appellant insisted that he was fine to drive, and when pressed by Mr. Steele, stated he had not been drinking. (*Id.*, 8: 24-25; 9:1.) Mr. Steele admitted that he did not smell alcohol on Appellant at the time, but as Appellant drove, he began to drive "excessive[ly]". (*Id.*, 9:5-12.) Mr. Steele stated that Appellant did not know the roads and it was dark, with a rainy, sleety, mist when they were underway. (*Id.*, 9:12-16.)

As they approached McVeytown, Mr. Steele asked Appellant to slow down multiple times, and stated Appellant was tailgating and travelling at a high rate of speed. (*Id.*, 10: 4-15.) He even told Appellant he knew the areas where police often stop speeding drivers, but Appellant kept stating he was ok. (*Id.*, 10:23; 11:1-3.) Shortly after they arrived in McVeytown, Appellant nearly rear-ended a car attempting to turn into the mini-mart. (*Id.*, 11:24-25; 12:1-13.) The car had to make a quick turn into the Mini-Mart to avoid being struck. (*Id.*) Appellant then followed the car into the Mini-Mart parking lot, exited the truck, and argued with the driver, who remained in his car and told Appellant he would contact the police. (*Id.*, 12:15-19.) Appellant told the driver to the police, got back into the truck and sped off. (*Id.*, 12:19-21.) After confronting Appellant again about whether he had been drinking, Appellant denied being drunk but admitted to drinking at Rookeez. (*Id.*, 13:2-9.) He also stated he had only had a couple of drinks. (*Id.*, 13:10-13.)

Appellant continued to drive, and missed the Lewistown intersection at the junction of 322 toward Harrisburg, despite Mr. Steele telling him the exit was coming up. (*Id.*, 13:22-25;14:1-8.) Mr. Steele stated at that point Appellant was, "scaring me to death. . . [it] was still the excessive driving. . . [i]t was still like riding the rear end of vehicles. . . [i]t was like road rage." (*Id.*, 14:10-15.) At that point, the two passed the last exit and Mr. Steele remembers nothing but waking up in an ambulance. (*Id.*, 14:20-22.)

Mr. Steele further testified he received and continues to receive medical treatment for nerve damage, and has lost all feeling in his right leg from the knee down, and likely will never get the feeling back in his leg.

(*Id.*, 16:1-16.) He stated that two days after he was in the trauma center, Appellant contact him and asked if the police had talked to him, asking him if they did to say that Appellant had not been drinking. (*Id.*, 16:19-25.)

During its case in chief, the Commonwealth also called Officer Horning of the Mifflin County Regional Police. Officer Horning testified he was dispatched to a motor vehicle accident call on 322 at around 7:00 P.M. on January 9. (*Id.*, 23:8-11.) Upon arrival, he discovered an overturned pickup truck, with an individual pinned inside. (*Id.*, 23:11-19.) He later identified the passenger as Mr. Steele. (*Id.*, 23:20.) However, the driver was not on scene. (*Id.*, 23:24-25; 24:1-3.) Witnesses told him the driver had walked off and provided a description. (*Id.*) After a failed attempt to locate the driver, he issued a lookout bulletin, but discovered the driver, identified as Appellant, on scene. *(Id.*, 24:3-17.)

When Officer Horning spoke with Appellant, Appellant explained the reason for the trip with Mr. Steele, and stated he had left the scene because he was "pacing around because he was nervous as hell." (*Id.*, 24:18-24.) When the officer questioned Appellant about the cause of the accident, Appellant stated he hit something on the road, lost control, and struck the guardrail. (*Id.*, 25:8-12.) The officer further testified Appellant exhibited signs of intoxication, such as the strong odor of alcoholic beverage on his breath; glassy, bloodshot eyes; and a staggered gait. (*Id.*, 25:13-16.) Appellant also admitted to having two beers around 3:00 P.M. (*Id.*, 25:25; 26:1-2.)

Officer Horning then asked Appellant if he would submit to Standard Field Sobriety Tests (SFSTs). (*Id.*, 26:9-18.) According to Officer Horning, Appellant performed poorly while attempting each test. (*Id.*, 26:19-27:1-10.)

During the Walk and Turn, Appellant failed to maintain starting position, missed heel-to-toe steps, and made an improper turn. (*Id.*, 27:1-4.) During the One Leg Stand, Appellant excessively swayed and put his foot down the first time after six seconds. (*Id.*, 27:5-10.) He placed his foot down a second time after ten seconds. (*Id.*)

Officer Horning arrested Appellant. (*Id.*, 27:12-13.) Shortly after transporting Appellant to Mifflin County Correctional Facility, the officer read Appellant his implied consent warnings and asked if he would submit to a breath test. (*Id.*, 28:12-16.) Appellant stated he did not feel comfortable submitting to a breath test without the presence of an attorney, which the officer treated as a refusal to test. (*Id.*, 29:24-25; 30:1-11.) Appellant also declined to sign the form indicating he refused a breath test. (*Id.*, 30:12-14.) The officer testified that in his training

3

and experience, Appellant was under the influence of an intoxicating substance, specifically alcohol, and as a result was incapable of safely operating a motor vehicle. (*Id.*, 31:16-25.)

## DISCUSSION

The Pennsylvania Superior Court has long held the standard of review for a sufficiency claim requires the court to evaluate the record in the light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence presented to the trial court. *Commonwealth v. Wilson,* 2020 Pa. Super. Unpub. LEXIS 3216, 241 A.3d 412, 2020 WL 6042047, citing *Commonwealth v. Franklin,* 69 A.3d 719, 722-23 (Pa. Super 2013) (internal quotations and citations omitted). Furthermore, evidence sufficiently supports the verdict when it establishes a material element of the crime beyond reasonable doubt. *Id.* However, the Commonwealth is not required to prove the defendant guilty of the alleged crime to a mathematical certainty, nor is it required to present any direct evidence of the crime. *Id.* The Commonwealth may carry its burden by presenting solely circumstantial evidence. *Id.*

The Superior Court is also unable to substitute its judgment for that of the lower court acting as fact finder. *Id.* The trial court, as fact finder, is able to freely assess and assign weight and credibility of a witness's testimony, and to consider all, part, or none of the evidence in rendering its verdict. *Wilson,* 2020 Pa. Super. Unpub. LEXIS 3216, citing *Commonwealth v. Ramtahal,* 33 A.3d 602, 607 (Pa. 2011). As long as the Commonwealth had demonstrated the respective elements of the Appellant's alleged crime, the conviction will be upheld. *Wilson,* 2020 Pa. Super. Unpub. LEXIS 3216, citing *Franklin.* 69 A.3d 719, 722-23 (Pa. Super. 2013).

In *Wilson,* the Superior Court upheld the appellant's conviction for DUI–controlled substance (metabolite) and DUI–impaired ability (controlled substances). *Wilson,* at 1. In that case, the appellant argued he was "charged and found guilty of driving while under the influence of a drug.   to a degree which impairs his ability to operate his vehicle. *Id.* at 4. However, no evidence was presented at trial that [appellant] had smoked any marijuana prior to driving." *Id.* at 5. The Court upheld the conviction, holding that the evidence supported the trial court's finding that the appellant operated a motor vehicle while under the influence, and had marijuana metabolites in his blood. *Id.* at 8. The Court reasoned multiple facts established the appellant was under the influence, including appellant's ten to fifteen failed attempts to park his truck at the dock, the strong odor of marijuana emanating from the driver's side

4

door when the officer spoke with the appellant, his positive responses when asked if he was the driver and had smoked marijuana, and poor performance on standard field sobriety tests. *Id.* at 9-10.

The case at hand mirrors the *Wilson* case. Here, just as in *Wilson,* Appellant was charged with, and convicted of, DUI.[1] Additionally, just as in *Wilson,* Appellant raises a claim regarding the insufficiency of the evidence presented. However, like in *Wilson,* Appellant's claims must fail due to the evidence presented by the Commonwealth at trial establishing Appellant was under the influence while operating a motor vehicle. This evidence likewise includes Officer Horning's discovery Appellant had lost control of his pickup, colliding with a guardrail and resulting in a rollover with severe injury to his passenger; the strong odor of alcohol on Appellant's breath when Officer Horning spoke with him; his admission that he had been driving at the time of the crash and that he had consumed alcohol before driving; and his poor performance on standard field sobriety tests. Moreover, Mr. Steele's testimony regarding the Appellant's consistently high rate of speed, tailgating, and aggressive behaviors toward other drivers on the road indicates impaired judgment and an inability to operate a motor vehicle at the time of their failed return trip to Harrisburg.

Accordingly, This Court respectfully requests the Superior Court of Pennsylvania affirm.

BY THE COURT:

DAVID W. BARRON
PRESIDENT JUDGE

c:    Carl Michael Ricketts, Jr.
        Inmate No. LH6927
        C/o: SCI Fayette
        50 Overlook Dr.
        LaBelle, PA 15450
    Public Defender
    District Attorney
    File

---

[1] The trial court notes that the specific charge in this case was DUI—General Impairment, and the substance involved is alleged to be alcohol, not marijuana, however, the thrust of Appellant's legal argument remains the same.